8  447
60  322
8  447
62  154
8  447
63  303

---

### DONALDS and others *against* PLUMB and another.

Where a testator devised to his grand-children, children of his daughter *A.*, all his estate, real and personal, to be equally divided between them, at her decease ; the use of such estate he devised for the support of *A.* and her children during her life ; and to carry this provision into effect, he appointed *B.* and *A.* trustees, who accepted the trust, and took into their possession the estate devised ; *C.* supplied *A.* and her children with necessaries in sickness, on the credit of this fund, *A.* being then a feme covert, whose husband was a bankrupt, and she and her children having no property except that so devised ; on a bill in chancery, brought by *C.* against the trustees to obtain satisfaction of his claim out of such fund, it was held, 1. that a trust was created by the will, and the estate so devised was a trust estate ; 2. that this trust was not merged in the legal estate of *A.*, as the equitable and legal estates were not commensurate, and such merger would frustrate the intent of the devisor and prejudice the beneficial interest of *A.* ; 3. that it was not necessary for the plaintiff to shew a previous judgment at law for his debt ; 4. that the declarations of *A.*, though a feme covert, were admissible to substantiate the plaintiff's claim, the object of the bill being, not to charge the husband, but a trust fund, in which he had no interest, and over which he had no controul ; 5. that *B.* one of the trustees, and the children of *A.* were incompetent witnesses, for the defendants, it having been found, that they were interested in the event of the suit ; 6. that in a decree for the plaintiff on such bill, it was not necessary to find what part of the supplies furnished was for *A.*, and what part for each of her children, the fund being a family provision, and the children not being parties to the suit ; 7. that the omission of the plaintiff to make the the children of *A.* parties to the suit, had this been originally proper, could not be excepted to, after final judgment.

Where the court, on such bill, passed a decree in favour of the plaintiff, for a certain sum, to be paid with interest, by a time prescribed, out of such trust fund, or on failure of such payment, that execution issue against the defendants personally ; it was held, that this was incor-

correct ; because it left the question of payment for the clerk to settle —an authority which he, as a ministerial officer, could not exercise— and because the defendants were liable only in their representative character, and not personally.

But as the merits of the cause were with the plaintiff, it was held, on a writ of error, that the judgment should be reversed only so far as it was thus erroneous, and that the cause should be remanded to the court below, with directions to proceed therein accordingly.

THIS was a bill in chancery, brought to the county court, by *Ovid Plumb* and *Frederick Plumb,* partners under the firm of *O. & F. Plumb*, against *Ezra Donalds* and *William Kingsbury* and *Abigail S. Kingsbury,* his wife. The bill stated, that *Rufus Marsh*, by this last will, devised to his grand-children, *Guy M. Kingsbury* and others, children of his daughter *Abigail S.,* " all his estate, real and personal, to be equally divided between them, at the decease of his said daughter ;" and the use and improvement of said estate be devised for the support of his daughter and her children, during her life : that to carry this provision into effect, he constituted and appointed said *Donalds* and *Abigail S.* trustees of said estate ; that the devisor then, and at his decease, owned a large estate, real and personal ; that these trustees accepted the trust, and took said estate into their custody and had the controul thereof, for the purposes mentioned in the will ; that said *Abigail S.* then was, and ever since has been, the wife of the defendant *William Kingsbury,* who then was, and ever since has been, insolvent, and wholly unable to support his wife and children ; that the use and improvement of said estate has been more than sufficient to support them, and rents and profits to the amount of 500 dollars are now in the hands of said trustees, unappropriated ; that said children are infants, without guardian ; that neither they, nor said *Abigail S.* have any estate, except that devised as aforesaid ; that said trust estate is beyond the reach of process, and cannot be taken, except by the aid of a court of chancery ; that since the death of said *Rufus Marsh,* said *Abigail S.*, and her children have, from time to time, been subject to sickness, which, required medical aid, which at her request, the plaintiffs rendered, relying, for remuneration, upon said trust fund, and upon that only ; that they have since presented their account to said trustees, who have refused to pay it, and it remains unpaid ; praying that so much of the trust fund as may be necessary to pay it, may be disposed of, for that purpose.

A committee appointed by the county court, reported, That the plaintiffs were partners ; that one of them, *viz. Ovid Plumb*, was a regularly licensed physician ; that *Rufus Marsh* made his last will, duly executed, to pass his estate, and died in *May* 1816, leaving a large estate ; that the will has been duly proved and approved ; that he thereby gave all his estate, real and personal, to be equally divided among his grand-children, upon the decease of his daughter *Abigail S. ;* that the testator then proceeded thus : " But the use and improvement of my estate I will shall be for the support of my daughter *Kingsbury* and her children, during her life ; and for that purpose, I constitute and appoint *Ezra Donalds* one of the trustees, and *Abigail S. Kingsbury* the other, to carry the same into effect ;" that he then appointed *Donalds* his executor ; that said trustees accepted the trust and took possession of the estate ; that before the devisor's death, said *Abigail S.* had intermarried with *William Kingsbury*, who then was, and ever since has been, a bankrupt, unable to support his wife and children, or to contribute thereto ; that said real estate has been occupied, and the rents and profits thereof are sufficient to support said *Abigail S.* snd her children, in sickness and health ; that the children are infants, and have no guardians, except their parents ; and that neither they, nor said *Abigail S.* have any property, except what is devised by said will. The report further stated, that from the 1st of *May*, 1817, to the year 1821, said *Abigail S.* and her children were occasionally afflicted with sickness, and required medical aid ; that the plaintiffs, with the knowledge of the trustees, and at the request of said *William* and *Abigail S.*, at various times during such sickness, rendered to said *Abigail S.* and her children medical aid and attendance, to the value of 36 dollars, 17 cents, which they charged to said *William*, but in rendering such services, they relied upon said trust fund for payment ; that during the times in which said medical aid was given, said *Abigail S.* often declared, that said services should be paid for out of said trust property ; that before suit, notice of the plaintiffs' claim was given to said trustees ; and that said *William Kingsbury* was the agent of the trustees and acted as such.

Against the acceptance of this report the defendants filed a remonstrance, on several grounds ; among which were the following : That the committee had not found what part of the plaintiffs' services was for the mother, and what part for the

*Litchfield*, June, 1831.

Donalds
*v.*
Plumb.

*Litchfield,*
June, 1832.

Donalds
*v.*
Plumb.

children ; whereas, the defendants averred, said children are not parties to the bill : That the declarations of said *Abigail S.,* while she was the wife of *William Kingsbury,* were offered in evidence, by the plaintiffs, to charge said trust fund in relation to her interest therein, and, though objected to, by the defendants, were admitted by the committee : And that the trustees and *John A. Kingsbury,* one of the children, were offered as witnesses, to contradict, among other things, all the testimony introduced by the plaintiffs ; to whose testimony the plaintiffs objected, and the committee ruled it out.

To the last cause of remonstrance the plaintiffs replied, that the witnesses were directly interested in the suit to defeat it ; and the court found them to be so interested. To the first mentioned objection, and also to that relating to the admission of the declarations of Mrs. *Kingsbury,* the plaintiffs demurred. The court decided, that the remonstrance, so far as demurred to, was insufficient ; and after an amendment of the report, it was accepted by the court ; the facts stated therein were found true ; the balance due the plaintiffs was ascertained ; and thereupon the court ordered and decreed, that said trustees pay the same and interest, with costs, by the first *Monday* in *April* 1828, out of said trust fund in their hands, or that, on failure thereof, execution issue for said sums against the defendants and against their goods and estate.

From the decree of the county court a writ of error was brought in the superior court ; and the questions arising thereon were reserved for the consideration of this Court.

*A. Sterling,* for the plaintiffs in error, contended, 1. That to sustain this suit, there must be a legal estate in the trustees ; but the record shews none. Could he sustain an action of ejectment ? There are no words of limitation, inheritance or even of grant, to *Donalds,* in the will of *Rufus Marsh.* 2 *Swift's Dig.* 104, 6, 7. 2 *Bla. Comm.* 327, 8. *Willes' Rep.* 180. 2 *Ves.* 666. 3 *Chan. Cas.* 48. The trustees can take nothing by implication, there being no duties imposed on them. *Trent* & al. v. *Hanning* & al. 7 *East,* 97. 103. *Moore* d. *Fagge* v. *Heaseman, Willes' Rep.* 141.

2. That the equitable estate of Mrs. *Kingsbury,* as trustee, is merged in the legal estate given to her. That the legal estate belongs to Mrs. *Kingsbury* and her children, is unquestionable. A devise of the rents and profits, carries the land. *Parker* v. *Plummer, Cro. Eliz.* 190. *South* v. *Alleine,* 1 *Salk.*

*228.* The statute of uses, 27 *Hen.* 8. is the law of *Connecticut.* It executes the use, and vests the legal estate in the *cestui que trust. Bacon* v. *Taylor, Kirb.* 368. And of the adjoining states. *Marshall* v. *Fisk,* 6 *Mass. Rep.* 31. *Jackson* d. *Brayton* & al. v. *Burchin,* 14 *Johns. Rep.* 124. 126.

3. That there must exist a legal debt in favour of the plaintiffs against the *cestui que trust ;* and that must have been reduced to judgment. *Wiggins* & al. v. *Armstrong* & al. 2 *Johns. Chan. Rep.* 144. *Hendricks* v. *Robinson, Id.* 290. *Brinkerhoff* & al. v. *Brown* & al. 4 *Johns. Chan. Rep.* 671. 677. *Williams* v. *Brown* & al. *Id.* 682. *McDermutt* & al. v. *Strong* & al. *Id.* 687.

4. That the declarations of Mrs. *Kingsbury,* a feme covert, were inadmissible. *Turner* & ux. v. *Coe* & al. 5 *Conn. Rep.* 93.

5. That *John A. Kingsbury* and *Donalds,* the trustee, should have been admitted as witnesses. 2 *Stark. Ev.* 786. 3 *Stark. Ev.* 1690. 1701. *Cornwell* v. *Isham,* 1 *Day* 35. *Swift's Ev.* 57, 8.

6. That the children of Mrs. *Kingsbury* should have been made parties to the bill ; they having an interest in the trust fund.

7. That the decree is wrong ; first, because it directs execution to issue *conditionally i. e.* if the defendants do not pay ; and secondly, because it is to issue, in the event specified, against the defendants *personally.*

*L. Church,* for the defendants in error, contended, 1. That the will of *Rufus Marsh* created a trust estate at common law. In all cases where one person establishes a fund for the benefit of another, which is put under the controul of a third person, there is a trust estate. Such is the present case. The testator provided a fund for the support of Mrs. *Kingsbury* and her children, which was committed to *Donalds* and Mrs. *K.,* in trust for the objects of the testator's bounty. The design of the testator, in this arrangement, is not opposed to any rule of law. *Trent* & al. v. *Hanning* & al. 7 *East* 97. S. C. cor. *Lord Eldon,* C. 10 *Ves.* jun. 495. *East-Sudbury* v. *Belknap,* 1 *Pick.* 512.

2. That the fact that Mrs. *Kingsbury* was a trustee, and had, at the same time, a beneficial interest, did not defeat the trust estate. Where an equitable and legal estate unite in the same person, the former will not be considered as merged in the latter, unless the purposes of justice require it. Here such

*Litchfield,*
*June 18 1.*

Donalds
*v.*
Plumb.

*Litchfield,* a merger could have no other effect than to defeat the just
June, 1831. and benevolent intention of the testator. 2 *Swift's Dig.* 107.

Donalds        *Starr* v. *Ellis,* 6 *Johns. Chan. Rep.* 395. *James* v. *Johnson, Id.*
*v.*            426.
Plumb.
4.    3. That the plaintiffs' claim being within the appropriate
jurisdiction of a court of chancery, a previous judgment at
law was unnecessary and absurd. A committee could ascer-
tain the sum due as well as a jury.

4. That as the object of the bill is to charge a fund, in
which Mrs. *Kingsbury* has an interest, but in which her hus-
band has none, there is no reason why her declarations
should not be admissible against her.

5. That the trustees and *John A. Kingsbury* were properly
excluded as witnesses; for the court found, that they were
interested.

6. That the decree of the county court will not be re-
versed, because Mrs. *Kingsbury's* children were not made
parties. In the first place, it was at no time necessary to
make them parties. *East-Sudbury* v. *Belknap* & al. 1 *Pick.*
512. But secondly, the objection comes too late. In *England,*
it cannot be made after the master's report, or by way of ex-
ception to it. 2 *Madd. Chan.* 142. Thirdly, if the objection
be made in season and for sufficient cause, the consequence
is not, that the bill is dismissed, but the cause is ordered to
stand over, with liberty for the plaintiff to amend the bill by
adding the proper parties. 2 *Madd. Chan.* 142. *Townsend* v.
*Auger,* 3 *Conn Rep.* 354. *A fortiori,* this objection cannot
prevail on a writ of error.

7. That the decree is unexceptionable in point of form.

**WILLIAMS, J.** Sundry objections have been made, by the
plaintiffs in error, to the decree of the county court; some of
which go to the foundation of the plaintiffs' claim, and some
to the forms of proceeding to establish it. Of the former
description is the objection that there is no trust created
by this will; or, at least, that there is no legal estate in *Donalds.*

The plaintiffs in error claim, that no estate is given to *Donalds,*
so that he could maintain ejectment for it; and so there is no
trust created.

Trusts may be created, by express words, or by words shew-
ing such an intent. 2 *Swift's Dig.* 107. And wills by which
trusts are created,—and indeed all wills,—must be construed ac-

cording to the intent of the devisor. No form of words is necessary : the intent is to be collected from the whole instrument. In the case of *Trent* & al. v. *Hanning* & al. 7 *East* 97. 99., after giving sundry legacies, the devisor appointed *A. B.* " trustee of inheritance for the execution thereof ;" and a question arose, whether *A. B.* could dispose of the inheritance. Lord *Ellenborough* said : " The trustee must take an estate commensurate with his duties " In this case, the testator's object clearly was, to provide for the support of his daughter, not intending that her husband or his creditors should controul it. He therefore gives his estate to his grand-children, after the death of their mother, and the use and improvement for the support of his daughter and her children ; and appointed *Donalds* one of the trustees, and his daughter *Abigail* the other, to carry the provisions of the will into effect. He here explicitly states his object, *viz.* that this estate, during his daughter's life, should be appropriated for the support of her family. Now, if he had done no more, a court of chancery would never have suffered his intent to be rendered ineffectual for want of a trustee. Rather than a trust shall fail, the court will appoint a trustee, or the heir shall be a trustee. *Philips* v. *Brydges*, 3 *Ves.* jun. 127. But the devisor does not stop there. He goes on and constitutes *Ezra Donalds* one of the trustees, and *Abigail S. Kingsbury* the other, to carry the provisions of his will into effect. He has made no disposition of this property, during the life of his daughter, unless to these trustees, or one of them ; but he has explicitly appropriated property, and as explicitly appointed trustees to carry that appropriation into effect. I have no doubt, therefore, that a trust was created by this will.

It was further claimed, that as *Abigail S. Kingsbury*, for whom in part this trust was created, was also a trustee, the equitable estate was merged in the legal. As a general rule, it is true, that the equitable and legal estate cannot subsist together. But to this rule there are exceptions.

First, the legal and equitable estates must be co-extensive and commensurate, or there must be the same estate in law as in equiy. *Philips* v. *Brydges*, 3 *Ves.* jun. 126.

Again, a court of equity will always prevent a merger, to preserve any beneficial interest of the party, to promote the purposes of justice or to effect the intent of the donor. *Starr* v. *Ellis*, 6 *Johns. Ch. Rep.* 395, 6. *Philips* v. *Brydges*, 3 *Ves.*

*Litchfield,*
June, 1831.

Donalds
*v.*
Plumb.

jun. 126. *Forbes* v. *Moffatt*, 18 *Ves.* jun. 384. *James* v. *Morey*, 2 *Cowen* 318. Now, the legal and equitable estates are not co-extensive and commensurate. The legal estate is in *Donalds* and Mrs. *Kingsbury;* the equitable, in her and her children. Again, the intent of the devisor would be entirely subverted, and the interest of Mrs. *Kingsbury* disregarded, by such a construction. With the master of the rolls, therefore, I have no difficulty in saying " that the common sense, stripped of all technical and artificial reasons, is, that the equitable estate is a mere creature of this court, and subsists in idea only as to any legal consequences that might result from the possession of it, but totally distinct from the legal estate."—" Such equitable estates are to be held perfectly distinct and separate from the legal estate." 3 *Ves.* jun. 126, 7.

It is said again, that however it may be in *England*, this is not a trust, because since the case of *Bacon* v. *Taylor*, *Kirb.* 368. there cannot be a trust estate in *Connecticut.* As to the case cited, it was an action at law; the trustee and *cestui que trust* contending for the possession of the trust property. Three judges out of five of the superior court held, that the trustee could not recover; and the two dissenting judges were *Sherman* and *Ellsworth.* Without stopping to enquire whether trusts are as beneficial as Sir *William Blackstone* considers them, or as necessary to meet the wants of refined society as Chancellor *Kent* intimates, it is enough for me to remark, that we are not now at liberty to question whether a trust estate can exist in *Connecticut.* Too much property is held upon conveyances in trust, and too many decisions have been made recognizing them, to permit me, at this time, to question their validity. And indeed, when I consider that their duration is limited in the same manner as all other estates, by the construction of the statute to prevent perpetuities, I do not apprehend, that any important evils will result from their admission. Should experience evince, that this opinion is incorrect, the legislature will doubtless adopt the proper remedy.

I will now consider the objections made to the proceedings on the trial.

It was objected, that the plaintiff must fail, because he had not proved his debt at law. The cases cited from *Johns. Chan. Rep.*, I think, do not reach this case. They only prove, that a creditor, *before judgment*, could not have an injunction to prevent a debtor's disposing of his property in fraud of such

creditor ; in other words, that he has no more a lien upon the
property, before judgment, in equity than at law.   The case of
*East-Sudbury* v. *Belknap* & al. 1 *Pick.* 512. 520. only shews,
that a judgment was obtained before a bill in chancery was
brought, but does not decide that it was necessary.   The court
do indeed cite the cases from *New-York* with approbation, but
do not go at all into this question.

But how are these cases applicable to the case before us ?
Trusts are the peculiar subjects of chancery jurisdiction.
When property is given, as it often is, for the sole and separate
use of a feme covert, and she contracts debts for her support ;
can that fund be resorted to, by a creditor, who has furnished
her with necessaries ; and if so, as it certainly may be, does
any case shew, that he must first resort to a court of law ?
Can this be done ?  Against whom is he to bring suit ?  Against
the wife ?   The law considers her incapable of contracting.
Shall the trustee be sued ?   It was not his debt : he never
authorized it.   Shall the husband be sued, when perhaps the
estate was settled upon the wife, for the very purpose of fur-
nishing her an ample support, independent of him, and when
he never authorized the contract ?   Is any case to be found,
where a court of equity has refused to interfere until the cred-
itor had done what he never ought to be permitted to do,—
obtained a judgment against some person who was under no
moral obligation to pay it ?   And if the creditor has no debt,
that he could establish at law, there is no doubt that a court of
equity will permit him to resort to this fund.   In *Kane* v.
*Bloodgood*, 7 *Johns. Chan. Rep.* 90. 116.   Chancellor *Kent*
says : Where a wife had conveyed her estate in trust for her
separate use, and borrowed money on a bond, though the bond
was held void at law, the master of the rolls held her sepa-
rate estate liable for the payment of her debts.   *Norton* v.
*Turville*, 2 *P. Wms.* 144.   And that eminent jurist, in the
case referred to, says : " I take it for granted, as the assu-
med doctrine, in all these cases, that an action at law will not
lie in the case of a mere charge upon land, where there is no
personal undertaking." 7 *Johns Chan Rep.* 116.

In this case, the trustee *Donalds* did not personally under-
take ; nor did *William Kingsbury* ; nor did any one but a
married woman ; and the credit was given to no individual,
but to the trust fund.   It would seem, therefore, to be the pre-
cise case spoken of, by the Chancellor, and the claim one to be
supported only in a court of chancery.

*Litchfield,*
June, 1831.

Donalds
*v.*
Plumb.

It was said, that here was no person to authorize the delivery of the goods. If that were true, it would furnish an additional argument to prove, that no one could be liable at law. But surely, Mrs *Kingsbury*, upon the credit of a fund given to support herself and her children, will, in a court of equity, be considered as authorized to procure, by means of it, sufficient assistance to prevent them from suffering for want of food or medical advice.

Another objection is, that the declarations of Mrs. *Kingsbury* were improperly admitted in evidence. That the declarations of a wife cannot be given in evidence, unless she acts by his permission or in pursuance of his authority, *when he has an interest in the cause*, is doubtless true. *Turner* & ux. v. *Coe* & al. 5 *Conn. Rep.* 93. But what interest the husband has in this cause I do not see, or how he is to be injured by the event. The object of the bill is, not to charge him or his estate, but a trust fund in which he has no interest, and over which he can exercise no controul ; from a participation in which he has been sedulously excluded. He is a nominal party on the record ; she, and the funds she represents, the real party ; and it would be a strange perversion of principle, that the declarations of the real party should not be admitted in evidence, because another person, who has really no interest, is, by the rules of proceeding, made a nominal party. The declarations of the wife were, therefore, admissible, and very proper evidence of the facts, to prove which they were introduced.

It was claimed, that *Donalds* and the children ought to have been admitted as witnesses. Now, it is very certain, that the fact, that *Donalds* was a trustee, or that he was a defendant in the bill, was not a sufficient ground of objection to him as a witness. But the trustee and the children of Mrs. *Kingsbury* certainly may have an interest in the event of this suit. And upon examination of this record, it appears, that the county court, have found that very fact : of course, there is no question of law open, upon this point, for examination in this Court.

Another objection was, that the court did not find what sums were due for the assistance of each of those who required it—*i. e.* how much was for the use of the wife, and how much for each of the children. As this fund was for the ben

efit of this daughter of the deceased and her children, during her life, as the family might need it, and not for equal distribution among them ; I think, all that was incumbent on the plaintiffs to prove, or for the court to find, was, that the services were for the family, without going into the enquiry how much was for each. But however that may be, the children are not made parties to this bill ; and therefore, could not be bound, by any such finding, had it been made. Of course, the enquiry would have imposed upon the court a task, which would have been tedious, and the result of which would have been of no importance. The plaintiffs had no interest in that question ; and as it could not have settled the amount as between Mrs. *Kingsbury* and her children, if a question should ever afterwards arise between them, I see no possible benefit resulting from it.

This brings me to the consideration of another objection, *viz.* that these children of Mrs. *Kingsbury* were not made parties to the bill. That thay have an interest in this trust fund and the disposition of it, and that a court of chancery is anxious that all those who have an interest in the subject of litigation, shall be brought before it, is certainly true. But it would be a matter of regret, if a party having gone through a tedious and expensive litigation, should be obliged to commence anew, upon such an objection. Here have been two committees appointed and two reports made ; and then a hearing before the court upon each of those reports ; and amidst the numerous objections which have been made, this was omitted. Now, this rule that all shall be parties who have an interest, is not inflexible. It is a rule of convenience, adopted by a court of chancery to shorten litigation, and introduced to prevent doing business by halves ; but it may be dispensed with, when impracticable or very inconvenient. *Wiser* v. *Blachly* & al. 1 *Johns. Chan. Rep.* 437. And it has been holden too late to make the objection after the master's report comes in. 2 *Madd. Chan.* 142. It follows of course, therefore, that it is too late after two reports, and after final judgment of the court, which had original jurisdiction of the cause, to permit a defendant to avail himself of such an objection. To allow it would be to make a practice introduced to restrain litigation, the mere instrument of its extension.

The last objection to the judgment obtained by the plaintiffs

*Litchfield,*
June, 1831.
Donalds
*v.*
Plumb.

in the bill, was, that there is a decree for a certain sum, to be paid, with interest, by a time fixed, and that unless it be paid, execution issue against the defendants personally. At law, the issuing of execution is perhaps no part of the judgment ; but here it forms part of the decree of the court, that on their failure to pay, execution shall issue against the defendants and against their goods and estate. This is incorrect ; because the execution is to issue upon a contingency—*if they do not pay.* It leaves a question for the clerk to settle, when he is called upon for execution, which is not within the jurisdiction of a ministerial officer, *viz.* whether payment has been made. This is an authority which the court cannot delegate, and which he cannot exercise.

Besides, these individuals and their estate are made personally liable for a charge upon the trust fund. They can be liable only as executors and administrators are liable, in their representative character ; and yet execution is directed to issue against them personally. This cannot be allowed.

But I should regret, that upon a point of this kind, after ascertaining that the merits of the cause were with the defendants in error, and that so many of the formal objections ought to be overruled, the cause should be opened upon a point like this. Perfect justice will be done to the parties, if the judgment should be reversed only so far as it is found erroneous ; and the court below should be directed to conform their judgment to that opinion. Such is the practice in the supreme court of the *United States ;* and such was the practice adopted by this Court, in *Judson* v. *Blanchard*, 3 *Conn. Rep.* 587. I would, therefore, advise the superior court, that as regards that part of the judgment relative to the issuing of execution only, there is error in the proceedings ; and that the cause be remanded to the county court, for that court to conform their judgment to this opinion.

The other Judges were of the same opinion, except PETERS, J. who was absent.

Judgment reversed in part,
And cause remanded.