HeNdersoN, Chief-Justice
 

 When this case was-opened, my impression was, that as the interest of the-wife was a vested remainder in lee,- after an estate for life in lier parents, and was therefore incapable of a sei-sin either in deed or in law, the law cast an estate on the husband during the marriage, which he could himself aliene, and which could consequently he sold for ids debts. I was letl to this conclusion from cases, which I then thought analogous
 
 ;
 
 to-wit, where the estate was incapable of an actual seisin, as in cases of advowsons, rents and other incorporeal hereditaments ; that the law gave them to the husband diming the marriage, and upon the death of the wife, having had issue born alive, he bc-came tenant by the curtesy thereof; and that upon the death of the wife, her heir succeeded to her estate or interest therein, without an actual seisin by- her. But upon reflection I am satisfied that all these analogies fail. That as regards the freehold interest of the wife,, the husband by the marriage alone can acquire no estate- or interest; and that there must he an actual seisin of the husband, during the marriage, of such estates as ad---
 
 *277
 
 mit of it; as in lands and other corporeal hereditaments; and in both corporeal and incorporeal estates a
 
 present
 
 interest. I confine myself to freehold interests. This rule is founded, I think, on feudal-reasons ; and although the doctrine of feuds lias in a great measure been abolished,still many of the rules growing out of it remain, and govern our real estates, and this among others. The reason, why in freehold interests there must be a present estate in the wife to give the husband an interest,arises from the principle of the feudal law, that it is the freeholder only, who is bound to perform the feudal duties ; and that as the functions of the government could not otherwise be carried on, (as the -feudatory was concerned in the making and administration of the laws, as well as the defence of the kingdom,) there must in every feud be a freeholder. For if one feud could bo withdrawn from the obligations by law imposed on it, all might; and thereby the functions of the government would entirely cease. Hence the rule, that the freehold could not be in abeyance, or in no one; and hence grew the rule, that a contingent freehold remainder must be preceded by a particular freehold estate. But no such rule prevailed with the residue of the inheritance. It might be in abeyance,. in uncertainty, or as is expressed by some,
 
 in nubibus.
 
 All that was required was, that there should always be a freeholder to occupy the land, ami answer for its duties. Where there was one, the ulterior limitations might be to uncertain persons, provided the uncertainty was removed before or at the time the person was wanted to fill the freehold. Hence the rule, that the contingent event, on which the remainder is to vest, .must happen, or the contingent remainder man must he
 
 in esse
 
 during the particular estate, or
 
 eo instanti
 
 that it determines, that there may he no chasm. A child in
 
 ventre sa mere
 
 would not at common law fill the freehold, and make the contingent remainder good. Hence the law is entirely regardless of looking out the remainder man, until he is wanted to fill the freehold, and will not before that time decide on the person to take. As where there is an estate to A for life, remainder to B and his heirs; B dies living A; the
 
 *278
 
 heir of B is not looked for until the death of A. For until that time he is not wanted to fill the freehold ; altho’ B had a vested interest, and he who is the heir of B at A’s death, and not he who is heir at B’s death, succeeds to the estate. We had a remarkable application of this rule some years ago, in the late Supreme Court, in the case of
 
 Exum
 
 v.
 
 Davie.
 
 (1
 
 Murph, 375.)
 
 An estate was limited to
 
 Harwood Jones
 
 for life, remainder to
 
 John Jones
 
 and his heirs.
 
 John Jones
 
 died before 1795, (when the act passed calling the females equally with the males to the inheritance,) leaving a son and a daughter. The son was then his heir, to-wit, at his death. After 1795,.
 
 JIarwood Jones,
 
 the tenant for life, died ; at which time both the son and daughter were the heirs of
 
 John Jones ;
 
 and they both succeeded equally to the estate. It was said to be quite immaterial who were'the heirs of
 
 John
 
 Jones, as to these lands, when
 
 John Jones
 
 died. For there was a freeholder in the person of the-particular tenant; and the law looked for the heirs, only when they wore wanted to succeed to the freehold interest, which was on the death of the tenant for life. In the case before the court,- the law docs not look for the children of the tenants for life, until the estate of the tenants for life determines. For they were wanted for no purpose, and as the husband had no duties to perform in regard to the lands, the law gave him no interest or estate therein. I have confined myself entirely to freehold interests. As to chattel interests in lands, as terms for years, the doctrine of feuds does not apply, as they were unknown to the feudal law.
 

 A sheriff can sell only such estates as the defendant in the execution can convey by deed passing an estate. “Where the deed of the defendant would operate only by way of estoppel, a sheriff’s deed conveys nothing
 

 As to the argument, that the husband could have sold these lands by estoppel, so he might sell any other lands in the same way; but the sheriff can only sell what the defendant himself can sell, where his conveyance operates by way of passing or transferring an estate ; not Where it operates by way of estoppel. If it included sales operating by the latter mode, the sheriff might sell any tract of land, or all the lands in his county.
 

 I have entered more at large into this case, from what fell from me, when it was opened. The authorities cited
 
 *279
 
 and relied on by the defendant prove that there must be a present interest and a seisin of corporeal hereditaments.
 
 (Taylor
 
 v.
 
 Hoode,
 
 1
 
 Bur. 107. Tho. Co.
 
 672, 532. 2
 
 Bl. Com.
 
 127. 2
 
 Bac. Ab. Curtesy, C.
 
 2, 3.
 
 Preston on Estates,
 
 215.) It may therefore be said as universally true, that by the marriage the husband acquires no interest in the corporeal real estates of the wife until actual seisin; and therefore can have no interest in her real estates in inversion or remainder, dependant on or after a preceding freehold estate therein in another, until the determination of that estate, and a seisin in him.
 

 Per Curiam.' — Judgment affirmed.