Battle, J.
 

 The facts stated in the case agreed, present the question, whether the reversionary estate in lands in fee simple, after a life estate in the same is to be regulated in its descent by the sixth rule in our canons of inheritance in the same manner as if it were an estate in possession. The solution of this question depends upon the sense in which the word
 
 “
 
 seized ” is used in those canons. This word is a well known term of the common law, signifying the possession or occupation of the soil by a free man or freeholder, one who has at least a life estate in the land, 2 Black. Com. 104. Seizin was of two kinds, sei-
 
 *347
 
 zin in deed, or the actual possession or occupation of the land, and seizin in law, which was a bare right to possess or occupy it. Ibid 127. The difference between the two kinds is thus illustrated : “ Where a freehold estate is conveyed to a person by feofment, with livery of seizin, or by any of those conveyances which derive their effect from the statute of uses, he acquires a seizin in deed and a ’freehold in 'deed. But where a freehold estate comes to a person by act of law, as by descent, he only acquires a seizin in law; that is,, a right to the possession; and his estate is called a freehold in law. For, he must make an actual entry on the land to acquire a seizin, and a freehold in deed.” 1 Cru. Dig., tit. 1, see. 24; Co. Lit. 266 b. In the English Canons of Inheritance, an actual seizin of land was necessary to constitute a person an ancestor from whom an estate could be derived by descent. A bare right or title to enter or be otherwise seized, would not do. Hence the maxim,
 
 seisina fcucit stipitem.
 
 Black. Com. 209; Co. Lit. 15. It is manifest, from this explanation of seizin, that neither actually nor legally could it be had of a remainder or reversion after a life estate. It could not be so had, because the tenant for life-was in the present occupation of the land, and there could not. be two distinct or separate seizins in the same land, at the same' time. Hence arose a peculiarity in the descent of such estates,, which is well expressed by Judge Story, in the case referred tO' in the argument of the defendant’s counsel, of Cook v. Hammond, 4 Mason’s Rep. 484. “ Where the estate descended, is a. present estate in fee, no person can inherit it, who cannot, at the time of the descent east, make himself heir of the person last in the actual seizin thereof. But of estates in expectancy,, as reversions and remainders, there can be no actual seizin during the existence of the particular estate of freehold; and,consequently, there cannot be any mesne actual seizin, which of itself shall turn the descent, so as to make any mesne reversioner or remainderman a new stock of .descent, whereby his heir, who is not the heir of the person last actually seized of the estate, may inherit. The rule, therefore, as to reversions and remain
 
 *348
 
 ders, expectant upon estates in freehold is, that unless something is done to intercept the descent, they pass, when the particular estate falls in, to the person who can then make himself heir of the original donor, who was seized in fee, and created the particular estate, or, if it be an estate b purchase, the heir of him who was the first purchaser of such reversion or remainder. It is no matter in how many persons the reversion or remainder may, in the intermediate period, have vested by descent; they do not, of course, form a new stock of inheritance. The law looks only to the heir of the donor or first purchaser.” See the note on the 228th page, in any of later editions of Black. Com., and the cases there cited. The same was held to be a rule of the common law in New York. Jackson v. Hendricks, 3 John. Cases, 214; Bates v. Schraeder, 13 John. Rep. 260; It has also been decided to be a part of our common law. Exum v. Davie, 1 Murp. Rep. 475.
 

 It is manifest, then, that, prior to the passage of our act to regulate descents in 1808, the son of the plaintiff’s lessor would not have been the
 
 propositus
 
 or stock from whom the inheritance could have been derived. Is the rule changed by that act? is the question which we now have to consider. The plaintiff’s counsel contends that it is, by force of the words “ actually
 
 or legally,”
 
 which are used in the first rule, in connection with the word “seized;” that those words must be supplied by construction, to explain and qualify the term seized wherever it occurs in the other rules; that a person is legally seized of an estate in reversion, after a particular estate for life ; and that all these propositions are established by the case of Bell v. Dozier, 1 Dev. Rep. 333. We do not understand the counsel to insist that the words “ legally seized” have a different signification in our act, from what they bear at common law. We suppose that he acquiesces in the rule, which is well established, “ that when a statute makes use of a word, the meaning of which was well ascertained at common law, the word shall be understood in the same sense it was at common law.” Kitchen v. Tyson, 3 Murph. Rep. 314; Rives v. Guthrie,
 
 ante.
 
 84.
 
 *349
 
 It is so even with regard to words used in our Constitution. Roberts v. Cannon, 4 Dev. and Bat. Rep. 256. In the matter of the contested election between Berry and Waddell, published in an appendix to the reports of the cases decided at December Term, 1848, 9 Ired. Rep. These words must then be understood in the same sense in which they are used at common law, as there is nothing in the act itself to show that they were intended to be used in any other sense. We admit that the words “ actually and legally ” are to be supplied whenever the term seized is used alone in any of the rules of descent prescribed in the act, because they are expressed in the first rule, and we can see no reason for excluding them from the others; and it was so held in Bell v. Dozier. We admit further, that that case is apparently an authority in 'favor of the other propositions contended for by the plaintiff’s counsel; and yet, we cannot yield our assent to the conclusion which he deduces from It. The judgment in that case may well stand, though some of the positions assumed in It are manifestly wrong, and the inferences drawn from them therefore erroneous. It was an action of waste against a dowress and her second husband, in which it is expressly stated, in the opinion of the Court, that the waste was committed upon the land assigned to the widow for her dower. She and her husband were therefore liable to the action, whether she held the land as dower, or as being vested in her for life, upon the death of her son Jesse, under the 6th Rule of Descents.
 

 In the course of his opinion, Judge Henderson says: “ The case does not expressly state that Jesse was ever actually seized; but I think it may be inferred from the assignment of dower — - for it is taken out of his seizin.” This is a plain mistake, for the widow’s dower is not taken out of the seizin of the heir, but of that of her husband. The well known maxim of
 
 dos de dote peti non
 
 debet, depends upon this very principle; for the reason is, that when the heir endows the widow of the ancestor, the assignment defeats the seizin which the heir acquired by the descent of the land to' him; so that the widow is in of the estate
 
 *350
 
 of her husband, and the heir is considered as never having been - seized of that part. In the same manner, if a woman, on whom lands descend, endows her mother, afterwards marries, has issue, and dies in the lifetime of her mother, her husband will not be entitled to an estate by the curtesy in those lands, whereof the mother was endowed, because the daughter’s seizin was defeated by the endowment. 1 Cru. Dig. tit. 6, ch. 8, sec. 20-21. Co. Lit. 81 a, 4 Rep. 122 a. The opinion upon which we are commenting, after using the words quoted as above, proceeds thus ; “ But, if it did not, the first canon of the act, speaking of lineal descents, declares that a seizin in law shall make a
 
 propositus;
 
 and although no such declaration is made in case of collateral descents, but the word
 
 1
 
 seized ’ only is used, I apprehend that the Legislature intended to make a legal seizin sufficient in both eases. No reason can be given why, if it is good in the one case, it is not so in the other.” By turning to the case, it will at once be perceived, that, upon the death of Jesse Barnard, the plaintiffs were entitled, as the next collateral heirs of his father, Peter Barnard, the person last actually seized. So that it was entirely unnecessary to raise the question whether they could claim the reversion after his widow’s life estate in her dower, as heirs of his son Jesse. But it must be admitted that the Court seemed to think that the question was presented, and they disposed of it, by assuming the position that Jesse Barnard was legally seized of the reversion. In that we think they’were in error. We have already given the definitions of, and pointed out the distinctions between, an actual seizin, or seizin in deed, and a legal seizin or seizin in law. In doing so, we have derived our information from the highest authorities known to the common law. That they are correct, we have the additional assurance in their application to the well known instances of curtesy and dower. Actual seizin in the wife is es- ' sential to give curtesy to the husband, while only a legal seizin in the husband is necessary to entitle the wife to dower; and yet neither curtesy nor dower attaches to a reversion after a life estate in the lands. 1 Cru. Dig., tit. 5, ch. 2, sec. 28, and tit.
 
 *351
 
 6, ch. 2, sec. 15; Co. Lit. 29 a, and 32 a. The law is different with regard to reversions after terms for years, because the possession of the tenants for years does not prevent the seizin of the reversioners.
 

 But it is said that, in pleading and other legal proceedings at the common law, a person is often said to be seized of a reversion ; and therefore the term seized may well be applied to reversions in our statute of descents. It is true, that it was held by the Court in the case of Wrotesly v. Adams, 1 Plow. Rep. 191, that in pleading it was not error to say, that one was seized as of fee of a reversion after a life estate. But, though that case was decided early in the reign of Elizabeth, the essential character of seizins, “actual and legal,” remained the same, and continued still to influence the doctrine of the common law, in relation to curtesy, dower and descent. It is almost certain, that our statute intended to refer to it; else, why use the words, “actually or legally,” at all? The argument derived from the use of the word “seizin,” in pleading, as applied to a reversion, would have been much stronger, had our statute used that word alone, without other words qualifying it, and pointing to the well established distinction between aetual and legal seizin.
 

 It is said again, that hardships will sometimes be felt, unless the construction contended for by the counsel be adopted. Eor instance, if one die seized of an estate, leaving a widow and a daughter, and dower be assigned to the widow, and then the daughter has a bastard child, and dies in the lifetime of her mother, the bastard could not, under the 10th rule, inherit from his mother the part assigned to the widow. That may be true, but it only shows that the act is not broad enough to extend to every case of descent, leaving some to be regulated still by the rules of the common law. Among these are remainders and reversions after life estates, which were manifestly not within the purview of the legislature, else it would have given something more substantial to parents, in the very rule under which the plaintiff claims, than a dry reversion for life, after an estate
 
 *352
 
 for life in tbe same lands. In reply to tbe argument derived from tbe supposed case of hardship which might occur under our construction, we ean state a case equally hard, which might happen under the construction contended for by the plaintiff’s counsel. If an alien father, having two sons, should come into this State with one only of his sons, and they should he naturalized, and then the father should purchase land, marry a second wife and die, devising the land to his wife, or, leaving it to be assigned to her for dower, and. then his other son should come into the State with the view to be naturalized, but his brother should die before the widow, he could not inherit the land under the plaintiff’s construction, though he might be naturalized before the death of the widow, because it would have escheated before that period; whereas, according to our construction, he might have taken it, when the life estate fell in, as the heir of his father, the person last actually seized. The case of Exum v. Davie, above cited, is an instance of the benign operation of the rule at common law. The truth is, that the act was mainly intended to operate upon estates in possession, and upon remainders and reversions, after estates for years, of which the owner might be said to be seized, either actually or legally, according to the meaning of those terms at common law. Some of its rules, as for instance, the second, which abolishes
 
 ¶rimogeniticre,
 
 and prescribes equality among males and females, and the third, which provides for the right of representation, extend to all inheritances, because they do not use the word “ seized ” at all. In the case of remainders and reversions after life estates, the rules of the common law still prevail, and the person who claims them must, when the particular estate falls in, “ make himself heir of the original donor, who was seized in fee, and created the particular estate, or if it be an estate by purchase, the heir of him who was the first purchaser of such reversion or remainder.” In our case, the plaintiff’s lessor, not being entitled to the land in question, either by the common law, or by our act of descents,
 
 *353
 
 must submit to have the judgment in his favor set aside, and judgment upon the case agreed entered for the defendant.
 

 Judgment reversed.