EARLY v. EARLY.

(Filed February 23, 1904).

1. PLEADINGS—*Waiver—Answer—Findings of Court—The Code, sec.
    253.*

> Where the parties to an action agree that the facts may be found
> by the trial judge and judgment rendered thereon, all defects
> in the pleadings are thereby waived.

2. ESTATES—*Remainders—Descent and Distribution—The Code, sec.
    1281.*

> Where a remainderman dies before the life-tenant, upon the death
> of the life-tenant the remainder descends to the heirs at law
> of the original remainderman.

ACTION by Josiah Early and others against Ella Early,
heard by *Judge C. M. Cooke* at November Term, 1903, of
the Superior Court of BERTIE County. From a judgment
for the defendant the plaintiff appealed.

*Francis D. Winston,* for the plaintiffs.
*J. B Martin, Day & Bell* and *Shepherd & Shepherd,* for
the defendant.

WALKER, J. This is an action for the recovery of real
property. A jury having been waived, the Court found the
following facts:

1. Andrew Early, late of Bertie County, owned in fee-
simple at his death a tract of land on which he lived, called
his home place, in said county, lying on both sides of the
public road from Hexlena to Conaritsa church.

2. That on December 27, 1895, said Early made his will,
which was thereafter duly admitted to probate and which is
made part hereof, in which he devised his said lands as fol-
lows: "Sixth. I give and bequeath to my sons Andrew Early

EARLY *v.* EARLY.

and Tobias Early, after the death of my wife Mary Early, to be equally divided in acreage, giving my youngest son, Tobias Early, the piece on which my dwelling and outhouse now stand."

3. Mary Early, the life-tenant, survived her husband Andrew, her son Tobias and the child Tobias, named hereafter, and died before this action began.

4. Tobias died intestate before this action commenced and before the said Mary, leaving him surviving his widow, the defendant, Ella Early, and his infant child by said Ella, and also his brothers and sisters of the whole blood, the plaintiffs above named, except T. T. Wynns, the husband of Annetta.

5. That the said infant child of Tobias and Ella died intestate without issue, and without brother or sister or issue of such capable of inheriting, leaving his mother, the said Ella, him surviving.

Upon the foregoing facts the Court rendered judgment against the plaintiffs, to which they excepted and appealed.

The plaintiffs' counsel moved in this Court for judgment on the pleadings, because it is alleged in sections 5 and 7 of the complaint that the plaintiffs are the owners of the land and that the defendant has no interest therein, to which allegation the defendant answers "that as in plaintiffs' complaint alleged, sections 1, 2, 5 and 7 are not true." No such motion was made in the Court below. Admitting for the purpose of the argument that the answer is defective in that it does not contain a sufficient denial of the material allegations of the complaint under section 253 of The Code, as construed in *Rumbough v. Improvement Co.,* 106 N. C., 461, cited by the plaintiffs' counsel in support of his motion, we are yet of the opinion that the plaintiffs cannot now take advantage of the formal defect, as their motion comes too late. If they were entitled to judgment upon the pleadings, they should have asserted their right to it before the case was sub-

mitted to the Judge below to find the facts and declare the law arising thereon. When the plaintiffs agreed that the facts of the case should be found by the Judge and a judgment rendered thereon, any and all defects in the answer were thereby waived and all irregularities cured. *Foreman v. Hough,* 98 N. C., 386; *Greensboro v. Scott,* 84 N. C., 184; *Robbins v. Killebrew,* 95 N. C., 19; *Hines v. Railroad,* 95 N. C., 434, 59 Am. Rep., 250.

The plaintiffs contend that they are the owners of the land because there was a failure of lineal descendants of Tobias Early, Sr., and therefore the inheritance descended to them as the next collateral relations of the person last seized, who are of the blood of Andrew Early, the ancestor of Tobias Early, Sr., and from whom the latter, who would have been one of the heirs of Andrew Early, received the inheritance by devise. The Code, chapter 28, rule 4.

The plaintiffs' right to recover turns, therefore, upon the question whether Tobias Early, Sr., or Tobias Early, Jr., was the person last seized at the time of the death of the latter. If Tobias Early, Jr., was the person seized at the time of his death, the inheritance vested in his mother, who survived him and who is defendant in this action, as we will presently show, but if he was not thus seized, then his father, Tobias Early, Sr., was the person last seized of the inheritance, and the plaintiffs as his next collateral relations are entitled to the land for the recovery of which this action is brought.

The plaintiffs' counsel relied upon the case of *King v. Scoggin,* 92 N. C., 99, 53 Am. Rep., 410, in support of the position that Tobias Early, Sr., was, at the time of the death of Tobias Early, Jr., the person last seized, and not the latter, as Tobias Early, Sr., was the first purchaser of the remainder and the only one of the two who could have had any seizin, and as Tobias Early, Jr., acquired the inheri-

tance by descent from his father during the continuance of the particular estate, that is, the life-estate of Mary Early, and the remainder thus descended created no seizin in Tobias Early, Jr., and consequently no new stock of descent. The case abstractly considered is full authority for the contention of the plaintiff and seems to have established the following rules to determine who will take, when the remainder or the reversion, during the continuance of the particular estate, descends to an heir who dies without issue, namely:

1. When the reversion or remainder expectant upon a freehold estate comes by descent, and the reversioner or remainderman dies during the continuance of the particular estate, he who would claim the estate by inheritance must make himself heir to the original donor who erected the particular estate, for it is the old inheritance.

2. When the reversion or remainder comes by descent, and before the determination of the particular estate, it is conveyed by deed or devise to a stranger, the donee takes by purchase; he becomes a new stock of descent and the estate will descend to his heirs.

3. Where the remainder or reversion is acquired by purchase, he who would claim the estate must make himself heir to the first purchaser of the remainder or reversion at the time when it comes into possession; for the remainderman or reversioner, by such purchase, has become a new *stirps* of descent.

Under the third of the rules stated by the Court, the plaintiffs claim that they are entitled to the land, as there was no seizin in Tobias Early, Jr., and the defendant, Ella Early, though heir to him, could not make herself heir to the first purchaser or person last seized, Tobias Early, Sr., at the time the remainder vested in possession by the death of Mary Early, the life-tenant.

The question as to what will constitute sufficient seizin to

make a new stock or *stirps* of inheritance (*sesina facit stipi-tem*) is exhaustively and learnedly discussed by *Ashe, J.,* in *King v. Scoggin,* and the rules and principles applicable to the special facts of that case and to the particular matter then under investigation were correctly stated by him. It will be observed that he was endeavoring to show that the plaintiffs in that case, who could recover only upon the strength of their own title and not upon the weakness of their adversary's, had failed to show any title as the heirs of George Hay, Jr., who was held to be the new stock of inheritance, or the person last seized, within the meaning of the rules of descent then in force. He expressly says that it was not necessary to investigate the defendant's title, and the Court was therefore not even called upon to decide whether under the law of descent in this State, as it then existed, George Wesson, under whom the defendant claimed, did not have such actual seizin or its equivalent in law as to constitute a new stock of inheritance. The case was decided upon the old law, which has been greatly modified by the amendments to be found in the Revised Code, ch. 38, and the present Code, ch. 28.

The plaintiffs also relied upon the case of *Lawrence v. Pitt,* 46 N. C., 344, which presented the very question we now have under consideration. The inheritance there was claimed by the father from his son, who in his turn had inherited it from his mother and she in her turn from her mother, the estate being a reversion in land expectant on the termination of a life-estate. The son died before the expiration of the life-estate, and it was held that the inheritance did not vest in the parent or father under the sixth canon of descent. That case, like the case of *King v. Scoggin,* is not in point, as both of them were decided upon descents which occurred before the year 1851, and to the facts

of those cases, therefore, the law, as first amended by the enactment of the Revised Code of 1854, did not apply.

In the case of *Lawrence v. Pitt,* the Court laid down the following principle: "Where the estate descended is a present estate in fee, no person can inherit it who cannot, at the time of the descent cast, make himself heir of the person last in the actual seizin thereof. But of estates in expectancy, as reversions and remainders, there can be no actual seizin during the existence of the particular estate of freehold, and consequently there cannot be any *mesne* actual seizin, which of itself shall turn the descent so as to make any *mesne* reversioner or remainderman a new stock of descent whereby his heir, who is not the heir of the person last actually seized of the estate, may inherit. The rule therefore as to reversions and remainders expectant upon estates in freehold is that unless something is done to intercept the descent, they pass, when the particular estate falls in, to the person who can then make himself heir of the original donor, who was seized in fee and created the particular estate, or, if it be an estate by purchase, the heir of him who was the first purchaser of such reversion or remainder. It is no matter in how many persons the reversion or remainder may, in the intermediate period, have vested by descent; they do not of course form a new stock of inheritance. The law looks only to the heir of the donor or first purchaser." And this is the law as stated by Blackstone, who says: "So also even in descents of lands by our law, which are cast on the heir by act of the law itself, the heir has not *plenum dominium,* or full and complete ownership, till he has made an actual corporal entry into the lands; for if he dies before entry made, his heir shall not be entitled to take the possession, but the heir of the person who was last actually seized. It is not therefore only a mere right to enter, but the actual entry, that

makes a man complete owner, so as to transmit the inheritance to his own heirs; *non jus, sed sesina, facit stipitem."*

The Court in applying this rule to the facts in that case held that, as descent was cast upon the son during the continuance of the particular estate of freehold the father could not take as his heir, nor could the inheritance vest in him under the sixth canon of descent, as he could not make himself heir to him who was the first purchaser or person last seized of the reversion.

It would be vain and useless now to discuss at any length the principles of the common law in regard to seizin as applied to the canons of descent in force prior to the enactment of the Revised Code, for by the latter the law in that respect has been so radically changed as to require almost a reversal of these principles in ascertaining who is entitled to the inheritance when descent is to be traced from the person last seized, but a brief review of the old law in regard to seizin will be out of place and may enable us the better to understand and construct the law as amended by the Revised Code. At the common law seizin signified the possession or occupation of the soil by a freeholder, one who has at least a life-estate in the land. This seizin was of two kinds, seizin in deed or in fact, which was when the person had the actual seizin or possession or occupation of the land with the intent, as is sometimes said, to claim a freehold interest and seizin in law, which was a bare right to possess or occupy the land or freehold, or, as otherwise defined, a right of immediate possession according to the nature of the estate. 2 Blk., 104-127; 1 Washburn R. P., 33, 34. The difference between the two is thus illustrated: "Where a freehold estate is conveyed to a person by feoffment, with livery of seizin, or by any of those conveyances which derive their effect from the Statute of Uses, he acquires a seizin in deed and a freehold in deed. But where a freehold estate comes to a person

by act of law, as by descent, he only acquires a seizin in law, that is, a right to the possession; and his estate is called a freehold in law.   For he must make an actual entry on the land to acquire a seizin or a freehold in deed."   1 Cru. Digest, Title I, sec. 24; Coke Lit., 266b., and sec. 448, H. & B.'s Notes, 1.

The essential principle of the ancient law of inheritance was that the stock of descent could not be established except by actual seizin of the freehold of inheritance, and the rule is thus comprehensively stated by Blackstone: "We must also remember that no person can be properly such an ancestor as that an inheritance of lands or tenements can be derived from him unless he hath the *actual seizin* of such lands, either by his own entry or by the possession of his own or his ancestor's lessee for years, or by receiving rent from a lessee of a freehold; or unless he hath had what is equivalent to corporal seizin in hereditaments that are incorporated, such as the receipt of rent, a presentation to the church in case of an advowson and the like.   But he shall not be accounted an ancestor who hath only a bare right or title to enter or be otherwise seized.   And therefore all the cases which will be mentioned in the present charter are upon the supposition that the *deceased* (whose inheritance is now claimed) was the last person *actually seized* thereof.   For the law requires this notoriety of possession, as evidence that the ancestor had that property in himself which is now to be transmitted to his heir.   Which notoriety had succeeded in the place of the ancient feudal investiture, whereby, while feuds were precarious, the vassal on the descent of lands was formally admitted in the Lords' Court (as is still the practice in Scotland) and there received his seizin in the nature of a renewal of his ancestor's grant, in the presence of the feudal peers, until at length, when the right of succession became indefeasible, an entry on any part of the lands

within the country (which if disputed was afterwards to be tried by those peers), or other notorious possession, was admitted as equivalent to the formal grant of seizin, and made the tenant capable of transmitting his estate by descent. The seizin therefore of any person, thus understood, makes him the root or stock from which all future inheritance by right of blood must be derived, which is very briefly expressed in this maxim, *seisina facit stipitem.*"

We must conclude after carefully reading *Lawrence v. Pitt,* 46 N. C., 344, which was decided in 1854, that it was thought the then existing law as declared by the Court, which had its origin in the feudal system and which was applied in that case, should be changed and brought more into harmony with modern conditions and requirements. It was manifestly in consequence of that decision that the amendments to the Revised Statutes of 1836 were made in the Revised Code of 1854, which amendments are as follows: Rule 1 of chapter 38 of the Revised Statutes provides that: "Inheritances shall lineally descend to the issue of the person who died last actually or legally seized, forever, but shall not lineally ascend, except as is hereinafter provided for," while section 1 of chapter 38 of the Revised Code provides that: "When any person shall die seized of any inheritance, or of any right thereto, or entitled to any interest therein, not having devised the same, it shall descend under the following rule: Rule 1. Every inheritance shall lineally descend forever to the issue of the person who dies last seized, entitled or having any interest therein, but shall not lineally ascend, except as hereinafter provided."

By the proviso to Rule 6 of the Revised Statutes, where the person last seized left no issue, nor brother, nor sister, nor the issue of such, the inheritance vested for life only in the parents of the intestate or either of them or the survivor of them, while the corresponding rule in the Revised Code

and the present Code it vests in the father if living, and if not, then in the mother if living, in fee. But in order that the meaning of the Legislature, as expressed in section 1 of the Revised Code, might be made plain and unmistakable, it was enacted by Rule 13 of chapter 38 that "Every person in whom a seizin is required by any of the provisions of this chapter shall be deemed to have been seized, if he may have had any right, title or interest in the inheritance."

We therefore see that the seizin, either in law or in deed, of the common law is not the seizin of the statute. The former requires that there shall be either actual possession or the right of immediate possession, while the latter requires that there need be only a right to, or interest in the inheritance, with or without actual possession or the present right of possession, in order to establish a stock sufficient as a source of descent.

It is therefore perfectly clear that under the law applicable to our case, that is, the law of the Revised Code as brought forward in the present Code, all that is required to constitute a sufficient seizin for the creation of a new stock of inheritance or *stirps* of descent is that the person from whom the descent is claimed should have had, at the time of the descent cast, some right, title or interest in the inheritance, whether vested in possession or not, for the language of the statute is explicit that a person having any such right, title or interest, shall be deemed to have been seized thereof. We are not entirely without what we regard as an authoritative interpretation of this new provision of the law. In *Sears v. Mc-Bride,* 70 N. C., 152, the plaintiff Thomas Sears claimed title to the land as heir of his son. The original owner of the land, or *propositus,* was Eliza McPherson, who intermarried with Isaac Fanshaw and died leaving issue by him, a son, William Sears, who died in 1852, leaving his father surviving him. In 1871, Isaac Fanshaw, who had a life-estate

in the land as tenant by the curtesy, died, the plaintiff sur-
viving him. The defendants were the next collateral rela-
tions of Eliza McPherson, from whom the estate descended.
This case in its facts is substantially like the case of *Law-
rence v. Pitt, supra.* The Court held that as the law stood
in 1852, and by which the case must be governed, the defend-
ants were entitled to recover, and in discussing the question
involved uses this language, *Settle, J.,* speaking for the
Court: "If this case were governed by the rules of descent
to be found in the Revised Code, chapter 38, the plaintiff
would be entitled to the land in controversy in fee-simple, but
since it is governed by the rules as found in the Revised
Statutes, chapter 38, he can take nothing. The learning on
this subject is so fully and satisfactorily stated in *Lawrence
v. Pitt* (46 N. C.), 344, that we shall not discuss the subject
further than to apply the law to the facts before us."

"But the law has been materially changed, as will be seen
by reference to the Revised Code, which enacts: 'Rule 1.
Every inheritance shall lineally descend forever to the issue
of the person who died last seized, entitled or having any
interest therein,' " etc. And further, as if to remove all
doubt, Rule 13 is enacted, which declares "Every person in
whom a seizin is required by any of the provisions of this
chapter shall be deemed to have been seized if he may have
had any right, title or interest in the inheritance." So that,
now, neither actual nor legal seizin is necessary to make the
stock in the devolution of the estates.

"And it will be observed that while the proviso to Rule 6
in the Revised Statutes gives in certain contingencies only a
life-estate to the parents, etc., yet in the Revised Code under
the same contingencies an estate in fee-simple is given to the
father if living, and if not, then to the mother if living."

While the precise point we are considering was not pre-
sented in that case so as to impart to the judgment of the

Court controlling authority as a precedent, the emphatic language of the Court, which we have quoted, and which is singularly applicable to our case, induces us to regard it as if it had the force and effect of an actual decision, even if the language of the law was not in itself plain or unambiguous. In addition to this, it will be observed that in the case of *Lawrence v. Pitt, Battle, J.,* referring to the contention of the plaintiff's counsel, that in pleadings and other proceedings at the common law a person is often said to be seized of the reversion, and that therefore the term "seized" may well be applied to reversions under our statute of descents, says that if our statute used only the word "seized" or "seizin" the argument would be a strong one, but that it used the words "actually or legally seized," and those words must be construed as they were used at common law in the case of dower, curtesy and descent. It is clear that the Court would have regarded the use of the term "seized" without the other words "actually" and "legally" as sufficient to describe the right, title or interest which a person even at common law had in a reversion or a remainder expectant upon an estate of freehold. The words "actually and legally" were omitted from the Revised Code, chapter 38, and the present Code, chapter 28, and we cannot avoid the inference that this was done designedly in deference to the intimation of the Court in *Lawrence v. Pitt* for the purpose of conforming the statute in this respect to the other amendments of it, so that "there will be left no hinge or loop to hang a doubt on" as to the true intent and meaning of the Legislature.

Our conclusion must be that in this case the infant son of the defendant Ella Early at the time of his death, though it occurred when the particular estate of freehold was still outstanding, had that right, title or interest in the inheritance, remainder as it was, which in law is deemed to be a sufficient seizin to create a stock of inheritance in him, and

he having died, as stated in the facts found by the Court, without any issue capable of inheriting, nor brother, nor sister, nor the issue of such, the inheritance under Rule 6, chapter 28 of The Code, vested in the defendant Ella Early, and she is the owner of the land as between herself and the plaintiffs, the life-tenant, Mary Early, having died before this action was commenced. For this reason the judgment of the Court below was right, and must therefore stand.

Affirmed.

DOUGLAS, J., dubitante.