KATHLEEN TYNDALL AND RUTH TYNDALL v. T. R. TYNDALL AND LOUISE TYNDALL.

(Filed 17 October, 1923.)

1. **Trusts—Resulting Trusts—Husband and Wife—Purchase Money—Evidence.**

Where the wife has furnished the purchase money for lands, and the husband has taken a deed conveying the legal title to himself, without valid agreement between themselves that he should acquire it, the law raises a resulting trust in the lands in favor of the wife, the husband holding the mere legal title under the general equitable principles applying, which she may enforce as the beneficial owner. The rule admitting parol evidence to rebut a resulting trust has no application to the facts of this case.

2. **Same—Descent and Distribution—Statutes.**

The resulting trust in favor of the wife in lands the legal title to which has been acquired by her husband by deed is now descendible to her heirs under our canons of descent, defining seizin to be any right, title or interest in the inheritance, under the definition of seizin, for the purpose, being any right, title or interest in the inheritance (C. S., sec. 1654, rule 12), though she may not have been in separate possession thereof during her life. *Barrett v. Brewer*, 153 N. C., 547, cited and distinguished.

3. **Same—Tenant by the Curtesy.**

Where the husband had the legal title to lands conveyed to him, in which the wife had a trust resulting in her favor, she having furnished the purchase money, after her death her husband is entitled to an estate therein as tenant by the curtesy (C. S., sec. 1654, rule 12), there being children of the marriage born alive and capable of inheriting. The old common-law rule, and changes therein made by statute, discussed by ADAMS, J.

APPEAL by all parties from *Calvert, J.,* at June Term, 1923, of LENOIR.

Civil action. W. J. Tyndall and Addie E. Tyndall were husband and wife. On 15 November, 1898, J. A. McDaniel and wife executed a deed in fee simple to W. J. Tyndall for a lot in the city of Kinston, the entire consideration thereof, according to the verdict of the jury, being the sole and separate money of Mrs. Tyndall. A small house was then built on the lot and was occupied by the family, the plaintiffs contending that it was built by W. J. Tyndall, the defendants contending that the money which went into the building was the property of the wife, and that a part of it was secured by a mortgage on the property. On this question the evidence is not definite. The plaintiffs were the only children born of this marriage. While the family were living in this house, W. J. Tyndall died, but the date of his death does not appear. On 23 Feb-

ruary, 1904, Addie E. Tyndall and T. R. Tyndall were united in marriage, and on 6 January, 1905, the defendant Louise was born. The evidence indicates that Mrs. Tyndall did not know that the title to the lot was taken in the name of her first husband until some time after her second marriage. She died 28 November, 1908, survived by the parties to the action.

The object of the suit is to remove an alleged cloud from the plaintiffs' title.

*Cowper, Whitaker & Allen for plaintiffs.*
*Rouse & Rouse and P. D. Croom for defendants.*

### PLAINTIFFS' APPEAL.

ADAMS, J.   The plaintiffs rest their alleged cause of action on these two grounds: (1) The complete title to the lot vested in their father, W. J. Tyndall, as grantee of McDaniel, and upon his death descended to the plaintiffs as his heirs at law.   (2) Even if the lot was paid for out of money belonging to Mrs. Tyndall, she did not contest or dispute the title during the life of her first husband, and had only a right in equity and not such seizin as was necessary to transmit the inheritance to her heirs.

On the other hand, the defendants insist that out of the purchase by W. J. Tyndall there arose a resulting trust in favor of Mrs. Tyndall, whereby she held such title or estate in the property as was descendible to her surviving children, subject to the curtesy of her surviving husband.   The rights of the parties are dependent upon a proper solution of these respective contentions, and the solution cannot be worked out without reference to the equitable doctrine of trusts.

By means of the doctrine of uses as developed in the common law, the title to land was decomposed or separated into the constituent elements of legal and beneficial ownership, the feoffee holding the legal title with no beneficial right, and the *cestui que use* the beneficial interest with no legal title.   While the feoffee was originally regarded in law as the real owner, the *cestui que use* could alien or devise the use, which, if not aliened or devised, descended according to the rules of the common law pertaining to inheritances in land.   This situation developed two classes of beneficial interests—the simple use and the special trust—each of which was enforceable by a subpoena issuing out of chancery; for the courts of common law took no cognizance of these equitable interests. But no restraint was imposed on the feoffee's right of alienation; consequently, if the feoffee and the *cestui que use* disposed of their respective interests, the alienee of the feoffee could interfere with the beneficial

enjoyment of the alienee of the *cestui que use*. This was one of the several evils which occasioned the enactment of the statute of uses (27 Henry VIII).

It was the purpose of this statute to execute the use or to transfer the use into possession by providing that wherever one person was seized of an estate for the use of another, the *cestui que use* should be deemed to be seized and possessed of the same estate in the land that he had in the use, and should have power to protect his possession by action or entry for waste, disseizin, trespass, condition broken, or other similar wrong. Under these circumstances the estate could be dealt with at law, and the *cestui que use* was no longer compelled to appeal to the conscience of the feoffee or to call in aid the powers of a court of chancery. But in construing the statute the courts afterwards concluded that there were certain uses which the statute did not execute—for example, an estate to A to the use of B in trust for C. At law, it was held that the statute extinguished A's interest and transferred the legal estate to B, but did not affect the trust for C. Although B was bound in good conscience to give C the enjoyment of the estate, still at law C had no remedy, and he could proceed, as before the statute, only by subpœna in chancery to compel B to execute the trust. There were other non-executed uses which could not be enforced in a court of law; and the courts of chancery, for the purpose of compelling performance, took jurisdiction of the uses which were not executed by the statute, from which situation was evolved the modern doctrine of trusts. Pollock & Maitland's His. Eng. Law, Vol. 2, pp. 226, 236; Select Essays in Anglo-Am. Legal His., Vol. 1, p. 218; 2 Bl. Com., 328; Bispham's Prin. Eg., 84 *et seq.;* 1 Perry on Trusts, Chs. 1 & 10; 4 Kent's Com., 290; *McDonogh's Exs. v. Murdoch,* 15 Howard, 367, 14 L. Ed., 750.

From the foregoing discussion it is apparent that where land is held by a trustee for the benefit of another, the courts of chancery generally treat the *cestui que use* or *cestui que trust* as the beneficial owner of the land, and not the mere possessor of an equitable right. "Under the system now generally prevailing, the *cestui que trust* is regarded as the real owner of the property, the trustee being merely a depositary of the legal title. His is not a property right, but a legal duty, founded upon a personal confidence; his estate is not that which can be enjoyed, but a power that may be exercised. No person but the trustee, or one claiming under him, can set up his legal estate against the equitable estate of the *cestui que trust.*" 39 Cyc., 203.

If it be contended that the doctrine we have referred to applies to express trusts and not to those arising by implication of law, and that in the latter class entry or actual seizin is necessary to the inheritance, a sufficient answer may be found in the change brought about by amend-

ments to the canons of descent. The subject is clearly and fully discussed by *Justice Walker* in *Early v. Early,* 134 N. C., 258, in which he emphasizes the distinction between the actual or legal seizin formerly necessary to cast the descent and the right, title or interest in the inheritance which constitutes a sufficient seizin under the amended rules. Revised Statutes, ch. 38; Revised Code, ch. 38; C. S., ch. 29, sec. 1654 (12). In that case he said: "We must conclude, after carefully reading *Lawrence v. Pitt,* 46 N. C., 344, which was decided in 1854, that it was thought the then existing law as declared by the Court, which had its origin in the feudal system, and which was applied in that case, should be changed and brought more into harmony with modern conditions and requirements. It was manifestly in consequence of that decision that the amendments to the Revised Statutes of 1836 were made in the Revised Code of 1854, which amendments are as follows: "Rule 1 of chapter 38 of the Revised Statutes provides that 'Inheritance shall lineally descend to the issue of the person who died last, actually or legally seized, forever, but shall not lineally ascend, except as is hereinafter provided for'; while section 1 of chapter 38 of the Revised Code provides that 'When any person shall die seized of any inheritance, or of any right thereto, or entitled to any interest therein, not having devised the same, it shall descend under the following rule: Rule 1. Every inheritance shall lineally descend forever to the issue of the person who dies last seized, entitled or having any interest therein, but shall not lineally ascend, except as hereinafter provided.'

"By the proviso to rule 6 of the Revised Statutes, where the person last seized left no issue, nor brother, nor sister, nor the issue of such, the inheritance vested for life only in the parents of the intestate, or either of them, or the survivor of them, while in the corresponding rule in the Revised Code and the present Code it vests in the father, if living, and if not, then in the mother, if living, in fee. But in order that the meaning of the Legislature, as expressed in section 1 of the Revised Code, might be made plain and unmistakable, it was enacted by rule 13 of chapter 38 that 'Every person in whom a seizin is required by any of the provisions of this chapter shall be deemed to have been seized, if he may have had any right, title or interest in the inheritance.'

"We therefore see that the seizin, either in law or in deed, of the common law is not the seizin of the statute. The former requires that there shall be either actual possession or the right of immediate possession, while the latter requires that there need be only a right to or interest in the inheritance, with or without actual possession or the present right of possession, in order to establish a stock sufficient as a source of descent."

The seizin of the common law was a seizin either in deed or in law, and, as suggested in *Early's case,* the principle of the ancient law of inheritance was that the stock of descent could be established only by seizin in deed—by the actual occupation of the land with intent to claim a freehold interest. As indicated, this principle of the common law was materially changed by the amendments we have cited. C. S., sec. 1654 (12). *Sears v. McBride,* 70 N. C., 152. It is in the light of these changes that *Lawrence v. Pitt,* 46 N. C., 344, *Thompson v. Thompson,* 46 N. C., 430, and similar cases should be considered. The decision in *Barrett v. Brewer,* 153 N. C., 547, is not inconsistent with this position, for it was there held that mere color of title in the absence of possession did not descend to the heir because the ancestor had no title and could avail himself of "color" only by actual possession.

At the time of her death, did Mrs. Tyndall have such right, title, or interest in the lot in question? The answer to the only issue submitted shows that the entire purchase price of the land was paid with her money. Her husband made the purchase and took title in his own name. This transaction created a resulting trust in favor of Mrs. Tyndall, such as arises by implication of law, and is founded upon the presumed intention of the parties. In *Beam v. Bridgers,* 108 N. C., 277, the Court said: "It is a well-settled principle that where, on the purchase of property, the conveyance of the legal estate is taken in the name of one person, but the purchase-money is paid by another at the same time or previously, and as a part of one transaction, a trust results in favor of him who supplies the purchase-money. Adams Eq., 33; Malone on Real Property, 509. The principle has frequently been applied where land is purchased with funds arising from the separate estate of the wife (*Cunningham v. Bell,* 83 N. C., 328; *Lyon v. Akin,* 78 N. C., 258) or with funds which, by agreement of the husband, are to be treated as such separate estate. *Hackett v. Shuford,* 86 N. C., 144, and the cases cited." *Lyon v. Aiken, supra; Ross v. Hendrix,* 110 N. C., 403; *Brisco v. Norris,* 112 N. C., 671; *Ray v. Long,* 128 N. C., 90; *McWhirter v. McWhirter,* 155 N. C., 146.

When in such cases the relation of husband and wife exists, the husband holds the legal title, it has been said, as a mere naked form and as evidence of title in favor of his wife. 26 R. C. L., 1228. In our decisions the wife's interest has been defined as a "beneficial interest" or an "equitable estate"; and it has been held that such interest or estate makes her the "equitable owner" or the "absolute owner" of the property held in trust. *Pegues v. Pegues,* 40 N. C., 418; *Cunningham v. Bell,* 83 N. C., 328; *Brisco v. Norris, supra; Cobb v. Edwards,* 117 N. C., 245; *Houck v. Somers,* 118 N. C., 607.

For these reasons upon the record as now presented we must hold that Mrs. Tyndall's right, title, and interest in the lot descended to her children as tenants in common and that the defendant Louise should not be excluded from participation therein.

Also we think his Honor properly refused the prayer for instructions tendered by the plaintiffs.    While parol evidence may be received to rebut a resulting trust (*Summers v. Moore,* 113 N. C., 403) our decisions hold that where a husband buys land with his wife's money and takes title in his own name a resulting trust arises in favor of the wife in the absence of an agreement to the contrary; and we find no evidence whatever of an agreement that the wife or the defendants or either of them should relinquish the beneficial ownership created by the trust. *Kirkpatrick v. Holmes,* 108 N. C., 206; *Ross v. Hendrix, supra; Ray v. Long, supra.*

While we do not approve the ruling that Mrs. Tyndall had only a right in equity, we concur in his Honor's conclusion that the plaintiffs and the defendant Louise are seized in fee of the land as tenants in common, each having a one-third undivided interest therein, subject to the curtesy of T. R. Tyndall as adjudged in the defendants' appeal.    On the plaintiffs' appeal as thus modified the judgment is affirmed.

Modified and affirmed.    ·

## APPEAL OF T. R. TYNDALL.

ADAMS, J.    His Honor adjudged that the defendant T. R. Tyndall has no interest in the land and is not entitled to an estate therein as tenant by the curtesy.

At common law the four requisites of a tenancy by the curtesy consummate were marriage, seizin of the wife, issue, and the death of the wife; and the wife's seizin must have been not a mere right or seizin in law, but actual possession or a seizin in deed.    2 Bl. Com., 127; *Gentry v. Wagstaff,* 14 N. C., 270; *Nixon v. Williams,* 95 N. C., 103. This principle prevailed with us before the adoption of the Revised Code (1 January, 1856), but since that time, as we have said in the plaintiffs' appeal, seizin in deed or actual possession is not essential to the devolution of estates.    *Sears v. McBride,* 70 N. C., 153; *Norcum v. Savage,* 140 N. C., 473; *Early v. Early, supra.*

In the present case the four requisites of such tenancy concur, the wife's seizin being such as to cast the descent under the amended canons; and the defendants consequently have a life estate in the land as tenants by the curtesy.    On the defendants' appeal the judgment is
Reversed.