CAROLINA POWER COMPANY v. MARTHA H. HAYWOOD ET AL.

(Filed 24 October, 1923.)

**1. Estates—Remainders.**

An estate in remainder is an estate limited to take effect in possession immediately after the expiration of a prior estate created at the same time and by the same instrument.

**2. Same—Contingent Remainders—Vested Interests — Statutes — Charitable Interests.**

Upon an estate to W. during his life, and at his death to his eldest son, not then *in esse,* with residuary clause to testator's children; upon the happening of the contingency of the birth to W. of a son: *Held,* the son takes upon his birth a vested interest, not depending upon his living longer than his father, and upon the falling-in of the life estate it descends, under our present canons of descent, to his next of kin, and does not fall within the residuary clause. C. S., sec. 1654; rule 12; also rules 1, 4, 5.

**3. Wills—Interpretations—Interest—Rules of Construction.**

A contrary intent of the testator will not be presumed which is at variance with the obvious meaning of the language he has used in his will, construed in accordance with the established canons of construction.

CIVIL ACTION, heard by *Daniels, J.,* at August Term, 1923, of CHATHAM.

A jury trial was waived, and the facts and the law were submitted to, and passed upon by, the court.

The plaintiff alleges that it is the sole owner of the land in controversy, and the defendants make denial and allege that they should be let into possession as tenants in common with the plaintiff. The purpose of the action is to remove a cloud from the plaintiff's alleged title.

The facts are as follows:

1. That William Boylan, late of Wake County, died in said county on 16 July, 1861, seized and possessed of a large estate, including the lands described in the complaint.

2. That the said William Boylan, on 18 June, 1858, made and published his last will and testament, which thereafter, ensuing the death of the said William Boylan, was, at the November Term, 1861, of the Court of Pleas and Quarter Sessions of Wake County, duly admitted to probate and record in said county, and was duly recorded in said county, in Book 32, pages 78 to 85, inclusive; and said will was thereafter certified to and recorded upon the will records of the county of Chatham, in Book H, at page 472-8; that no caveat has ever been filed to said will; that said will shall be treated as if it were set out in this statement in full, but for brevity it will not be copied herein. The parts considered as material and vital to this controversy are the following items, to wit:

"Thirdly—I give, devise and bequeath to my son, John H. Boylan, for and during his natural life, my Cape Fear plantation, in the county of Chatham, and all of the negro slaves on the said plantation at the date of this will. If my said son, John, shall marry and shall have any lawfully begotten child or children, or the issue of such, living at his death, then I give, devise and bequeath the said plantation and negroes to such child or children; but if he shall die, leaving no such child or children, nor the issue of such, then living, then I give the said plantation and negroes to my grandson, William (son of William M. Boylan), during his natural life, and at his death to his eldest son."

"Twentieth—All the residue of my property, whether real or personal, and wherever situate, not herein disposed of, I give, devise and bequeath to my children, to be equally divided between them."

3. That John H. Boylan (son of testator) entered into the possession of the lands mentioned in the third paragraph of said will, which are the lands in controversy in this action, soon after the death of the testator, and remained in possession thereof until his death, in December, 1870; that said John H. Boylan never married, and died, leaving no issue surviving him.

4. That upon the death of the said John H. Boylan, William Boylan (son of William M. Boylan and grandson of testator) entered into the possession of the land in controversy, under and by virtue of said third paragraph of said will hereinbefore set out.

5. That the said William Boylan intermarried with Miss Placide Englehard, and there were born to said marriage two children. The first was William James Boylan, who was born 30 July, 1886, and who was the oldest and only son of the said William Boylan. The other child was Miss Josephine Boylan, who afterwards intermarried with Ellsworth H. Van Patten; that the said William James Boylan predeceased his father and died unmarried and without issue on 14 July, 1906, leaving surviving him his said sister, Josephine Boylan (afterwards Josephine Boylan Van Patten).

6. That after attaining the age of twenty-one, the said Josephine Boylan (afterwards Josephine Boylan Van Patten) executed to her father, William Boylan, a deed, conveying her interest in said land: that said deed was duly delivered, and recorded in the office of the register of deeds for Chatham County, North Carolina, on 22 November, 1912, in Book "FB," pages 25-26; that at the time of the execution and delivery of the said deed the said William Boylan was in possession of said land by virtue of the devise to him in the said third paragraph of said will hereinbefore set out, and continued in the possession of said land, as well before the execution of the said deed from the said Josephine Boylan as after, until his death.

7. That William Boylan (grandson of testator) retained possession of the land in controversy until his death. He died intestate in Wake County, North Carolina, on or about 6 February, 1915, and he left surviving him, and as his only heir at law, his daughter, Josephine Boylan Van Patten; and his estate was duly settled in the probate court of Wake County.

8. That Josephine Boylan intermarried with Ellsworth H. Van Patten, and there was born to that marriage only one child, Ellsworth H. Van Patten, Jr.; that said Josephine Boylan Van Patten died on or about 21 October, 1919, leaving her surviving her only son and heir at law, Ellsworth H. Van Patten, Jr., and her husband, Ellsworth H. Van Patten.

9. That after the death of William Boylan (grandson of testator), in the year 1915, Mrs. Josephine Boylan Van Patten, during her lifetime, and her husband and child after her death in 1919, were in the open, notorious, adverse and peaceable possession of the lands described in the complaint, and exercised upon said land the usual acts of dominion and ownership.

10. That during the early part of the year 1923, by proper and regular deeds of conveyance, all of the interest of Ellsworth H. Van Patten and Ellsworth H. Van Patten, Jr., in the lands described in the complaint were conveyed to the plaintiff; and the plaintiff now owns all the title in and to said lands which the said Ellsworth H. Van Patten and Ellsworth H. Van Patten, Jr., owned prior to 1 January, 1923.

11. That the defendants and the aforementioned grantors of the plaintiff are the only persons who, in any event, would now be entitled to take under the residuary clause (the twentieth item) of the will of said William Boylan, above set out; and they would take thereunder, if at all, the following shares or interests, respectively, that is to say, the grantors of the plaintiff, the said Ellsworth H. Van Patten, Jr., and his father would together take an undivided one-eighth interest in the land in controversy. The defendants, Martha H. Haywood, Elsie B. Haywood, Katherine H. Baker, Mary Snow Baskerville, Adelaide Snow Boylston, and William Boylan Snow, would each take an undivided one-twenty-fourth interest therein; the defendants, William M. Boylan, Rufus T. Boylan, Mary Kinsey Boylan Thompson, and Katherine B. Caperton, would each take an undivided one-fortieth interest therein; and the remaining defendants who are the descendants of Jennie Boylan Green, the only child of the testator by his second marriage, would collectively take an undivided one-half interest therein; and it is hereby stipulated that the attorney for said defendants may, at any time before the hearing, make specification in writing of the several shares of said one-half interest which said defendants would take, respectively.

His Honor rendered judgment, declaring the plaintiff to be the owner in fee simple of the land described in the complaint and in controversy, and that the defendants are not the owners of said land or any part thereof, and have no interest or claim therein. Whereupon the defendants excepted and appealed.

*Pou, Bailey & Pou and W. L. Currie for plaintiff.*
*Long & Bell for grantors of plaintiff.*
*Carter, Shuford & Hartshorn for the answering defendants, appellants.*

ADAMS, J. It seems to be admitted that the controversy depends primarily upon the third and twentieth items of the will, and that these

items must be interpreted in the light of the facts. The appellants insist that the interpretation of these clauses should be governed by the rule of construction adopted in 1827 and embodied in section 1737 of the Consolidated Statutes, and that the only two elements necessary to the operation of the statute are a contingent limitation and the death upon which the limitation is made to depend. Excluding the contingency of John H. Boylan's marriage and of his leaving surviving issue, the appellants contend that, since a quarter of a century elapsed between the death of the testator and the birth of the "eldest son" of William Boylan (grandson), the devise created a contingent limitation to a person not *in esse,* and that the estate, upon the death of William Boylan, vested in the testator's children under the residuary clause (item 20), or, to vary the proposition, that by virtue of the residuary clause, there is a limitation to the testator's children contingent upon the death of William Boylan (the life tenant) without a son; and that the third and twentieth items of the will should be construed as if they read, "I give the said plantation to my grandson, William, during his natural life, and at his death to his eldest son; but if he should die leaving no son surviving him, then I give the said plantation to my children, to be equally divided between them."

On the other hand, the plaintiff argues that the entire controversy may easily be determined by applying to the facts an established legal principle, namely, that William James Boylan, immediately upon his birth, acquired a heritable interest in the estate, which, under the canons of descent, passed upon his death to his sister, Josephine, as his heir at law.

It will be seen, therefore, that in its ultimate analysis the appeal presents this single question: What interest in the land, if any, was acquired by William James Boylan? Was it a vested interest or one contingent upon his surviving the life tenant? If it was vested and descendible, of course, it cannot be construed as coming within the residuary clause, as contended by the appellants.

What, then, is a vested and what a contingent remainder? An estate in remainder is an estate limited to take effect in possession immediately after the expiration of a prior estate created at the same time and by the same instrument. 23 R. C. L., 483, sec. 5. Discussing the distinction between vested and contingent remainders, Fearne says: "In short, upon a careful attention to this subject, we shall find that wherever the preceding estate is limited, so as to determine on an event which certainly must happen, and the remainder is so limited to a person *in esse,* and ascertained, that the preceding estate may, by any means, determine before the expiration of the estate limited in remainder, such remainder is vested. On the contrary, wherever the preceding

estate (except in the instances before noticed, as exceptions to the descriptions of a contingent remainder) is limited, so as to determine only on an event which is uncertain and may never happen, or wherever the remainder is limited to a person not *in esse* or not ascertained, or wherever it is limited, so as to require the concurrence of some dubious, uncertain event, independent of the determination of the preceding estate and duration of the estate limited in remainder, to give it a capacity of taking effect, then the remainder is contingent." . . . "It is not the uncertainty of ever taking effect in possession that makes a remainder contingent, for to that every remainder for life or in tail is and must be liable, as the remainderman may die, or die without issue before the death of the tenant for life. The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent. For instance, if there be a lease for life to A, remainder to B for life, here the remainder to B, although it may possibly never take effect in possession, because B may die before A, yet, from the very instant of its limitation, it is capable of taking effect in possession if the possession were to fall by the death of A; it is, therefore, vested in interest, though perhaps the interest so vested may determine, by B's death, before the possession he waits for may become vacant." Fearne on Remainders, Vol. I, pp. 216, 217. Blackstone's comment is to the same effect: "The remainder must vest in the grantee during the continuance of the particular estate, or *eo instanti* that it determines. As, if A be a tenant for life, remainder to B in tail; here B's remainder is vested in him at the creation of the particular estate to A for life; or, if A and B be tenants for their joint lives, remainder to the survivor in fee, here, though during their joint lives the remainder is vested in neither, yet on the death of either of them the remainder vests instantly in the survivor; wherefore, both these are good remainders. But if an estate be limited to A for life, remainder to the eldest son of B in tail, and A dies before B hath any son, here the remainder will be void, for it did not vest in any one during the continuance, nor at the determination, of the particular estate; and even supposing that B should afterwards have a son, he shall not take by this remainder; for, as it did not vest at or before the end of the particular estate, it never can vest at all, but is gone forever. . . . But contingent remainders may be limited to a dubious and uncertain person. As if A be tenant for life, with remainder to B's eldest son (then unborn) in tail, this is a contingent remainder, for it is uncertain whether B will have a son or no; but the instant that a son is born, the remainder is no longer contingent, but vested." 2 Bl. Com., 168 *et seq.* In 23 R. C. L., 499,

sec. 30, the principle is stated as follows: "So long as there is an uncertainty as to the person or persons who will be entitled to enjoy a remainder, it is contingent. In other words, where the person or persons who will take the remainder can only be ascertained upon the determination of the particular estate, the remainder, until then, is contingent. For example, if A be a tenant for life, with remainder to B's eldest son, then unborn, it is uncertain whether he will have a son or not. If A dies before a son is born to B, there is no person *in esse* to take the estate, and the remainder is absolutely gone, for the particular estate is determined before the vesting of the remainder. If B has a son born before A's death, the instant the son is born the remainder is no longer contingent, but vests in the son."

Guided by the foregoing authorities and others which are not cited, we are unable to concur in the argument that the vesting of the remainder was dependent on the decease of the life tenant during the life of the remainderman. In our opinion, the words, "to my grandson, William, . . . during his natural life, and at his death to his eldest son," are not susceptible of this interpretation. One of the prevailing rules of construction is that adverbs of time, or adverbial clauses designating time, do not create a contingency in a devise, but merely denote the time when the enjoyment of the estate shall commence. *Brinson v. Wharton,* 43 N. C., 80; *Rives v. Frizzle, ib.,* 237; *DeVane v. Larkins,* 56 N. C., 377; *Elwood v. Plummer,* 78 N. C., 392; *Harris v. Russell,* 124 N. C., 554. See cases collected in L. R. A., 1918-E, 1098. Accordingly, we regard it unquestionable that William Boylan (son of William M. Boylan), by virtue of the devise in the third item of the will, immediately upon the death of John H. Boylan, unmarried and without issue, took an estate in the land for his natural life, and that the remainder which was contingent theretofore (the remainderman not being *in esse*) became vested in William James Boylan at the moment of his birth. For this reason, section 1737 of the Consolidated Statutes, which pertains to contingent limitations, is not applicable to the facts. If William Boylan, the life tenant, had died before the birth of the remainderman, a very different question would have arisen, involving a limitation to become effective at the time of his death. It will be noticed upon examination that the decisions cited and relied upon by the appellants relate to such contingent limitations — not to vested interests — and are principally influenced, if not entirely controlled, by the provisions of the statute to which we have just referred. We deem it unnecessary, therefore, to enter into an analysis of these decisions and to show wherein the principles upon which they were rendered may be distinguished from the principle by which we are controlled in the instant case.

The next question is this: If the remainderman, William James Boylan, acquired a vested interest in the land, did he have such seizin as is necessary to make his interest heritable or descendible to his heirs, under the canons of descent?

In *Early v. Early,* 134 N. C., 258, *Mr. Justice Walker* remarked that the essential principle of the ancient law of inheritance was that the stock of descent could not be established except by actual seizin of the freehold of inheritance, but under the present law all that is required to constitute a sufficient seizin for the creation of a new stock of inheritance or *stirpes* of descent is that the person from whom the descent is claimed should have had, at the time of the descent cast, some right, title or interest in the inheritance, whether vested in possession or not; and, further, that the amendment was made in consequence of the decision in *Lawrence v. Pitt,* 46 N. C., 344. The same conclusion was reached in *Tyndall v. Tyndall, ante,* 272. The statute particularly relevant here is C. S., sec. 1654. It explicitly provides that when any person dies seized of any inheritance or any right thereto or entitled to any interest therein, not having devised the same, it shall descend under the prescribed rules; and rule 12 provides that every person in whom a seizin is required shall be deemed to have been seized if he have any right, title or interest in the inheritance. See, also, rules 1, 4 and 5.

We have not overlooked the argument addressed by the appellants to the question of the testator's intent to preserve the estate in all its subdivisions to the direct line of succession in his own family, or ignored any of the provisions in the will, or disregarded the rule which makes the testator's intent a material element of construction; but we are not permitted to substitute a presumed intention which is at variance with the obvious meaning of the language employed when construed in accordance with the established canons of construction. *McIver v. McKinney,* 184 N. C., 393.

We must, therefore, hold in the instant case that William James Boylan acquired a heritable interest in the land in suit, which, upon his death, descended to Josephine, his sister and only heir at law. This being true, upon the facts found, the plaintiff's title is indefeasible, and the judgment rendered by his Honor in the court below is in all respects

Affirmed.