## Sarah E. Bowlin *et al. vs.* Rhode Island Hospital Trust Co., Trustee.

### JUNE 23, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Trusts. Remainders. Merger. Possibility of Issue.*

Testator died, leaving a will providing that his wife should have all his real estate, and the interest and income of his personal estate, during life, and by clause two of the will, in the event of her decease, he gave to each of his two daughters a parcel of real estate and one-half of his personal estate, but directed (clause three) that the shares of the daughters should not absolutely vest in them but should be retained by trustees, and only the income paid them during their lives; and in the event of the decease of one, the whole share of such daughter to go to the survivor.

By the 4th clause of the will, he provided "to X. all my real estate and personal property, provided that she survive my wife and daughters, and the children of said daughters."

The wife and X. having deceased, the daughters, claiming that they were then the sole heirs at law of testator, sought a termination of the trust and a conveyance of the property to them, it being urged that they were of an age where there was no longer possibility of issue:—

*Held*, that clause two did not create a joint tenancy, but made specific devises in severalty, while the right of the survivor to the entire beneficial use of the trust estate was clearly provided for in clause three.

*Held*, further, that the positive prohibition of the vesting of the estates in the daughters showed the dominant purpose in clause three to be to create an equitable joint tenancy, so that the trust must remain in force until the death of the survivor of them, thus preventing a merger of estates in the daughters.

*Held*, further, that the presumption of law is in favor of issue, notwithstanding advanced age.

(2) *Trusts. Distribution Not to be Determined in Advance.*

Prior to the time when distribution is to be made under a trust, it is unnecessary to determine to whom such distribution shall be made.

BILL IN EQUITY, for termination of trust.

BLODGETT, J. The complainants, alleging that they are not only the *cestuis que trustent* under the trusts created by the will of William H. Williams, late of Providence, deceased, but are also now his sole heirs at law, seek a termination of the

trusts created by said will, of which the following portions are material in this inquiry:

"II.   In the event of the decease of my said wife before my daughter, Sarah Elizabeth Peck, wife of Charles Watson Peck, my estate situate at No. 100 Dexter st. in said Providence, and one half of my personal property, and to my daughter Adeline Lawton Brown, wife of Levi B. Brown, my estate situate on School st. in the town of East Providence, Rhode Island, and the remaining half of my personal property.

"III.   But I hereby direct that the shares of my said daughters shall not absolutely vest in said daughters, but their shares shall be retained by my trustees for the time being, whether appointed by me, or by the proper tribunal of the State, and put at interest, or upon rent, and only the income thereof paid to my said daughters during their natural lives, and in the event of the decease of one of my said daughters, the whole share of such daughter to go to the survivor.   And I hereby expressly direct that no part of the share of either of my said daughters, or of the income thereof, shall be in any manner subject to the control of any husband of either of my said daughters, or liable under any mortgage, pledge, or other contract of such husbands, or in any manner liable for any debt of such husband.   But my trustee shall retain the entire property of the share of either of my said daughters, whether it be of real or personal estate, during the life of said daughters and pay over the use and income thereof quarterly, or oftener, as may be convenient for them, into the hands of my said daughters, or of the survivor of them, upon their own sole receipt therefor.

"IV.   To Martha Jane Blake, wife of William Luther Blake, all my real estate wheresoever situate, and all my personal property of whatever kind, provided that she survive my said wife and daughters and the children of said daughters."

Both the wife of the testator and Martha Jane Blake are now deceased, and the complainants claim that they are now the sole heirs at law of their said father, and hence that the trusts should be terminated and the property be conveyed to them free of the trust.

(1)  We are of the opinion that this should not be done. Conceding all that is contended for by the complainants, it is clear that clause two *supra* does not create a joint tenancy but makes specific devises in severalty, while the right of the survivor to the entire beneficial use of the trust estate is clearly provided for in clause three. In *Johnson* v. *Johnson*, 7 Allen, 196, 197, it was said by Bigelow, C. J., in considering the right to partition: "The petitioner and his wife became seised of a life estate during their joint lives and the life of the survivor, and their children became seised of a vested remainder in fee. . . . Subsequently the remainder in fee of five sixths of the premises became vested in the petitioner. But this did not merge his life estate so as to vest in him an absolute fee in five-sixths of the premises. The life estate of his wife in the entire premises was still outstanding. This intervening estate prevented a merger; the elementary definition of which is, the annihilation by act of law of the less in the greater of two vested estates meeting, without any intervening estate, in the same person and in the same right." And in *Philips* v. *Brydges*, 3 Ves. Jr., 120, 125, it was observed by Sir Richard Pepper Arden, master of the Rolls, as follows: "Another position was maintained in a latitude that would create infinite confusion; that where there is in the same person a legal and equitable interest, the former absorbs the latter. I admit, that where he has the same interest in both, he ceases to have the equitable estate, and has the legal estate; upon which this court will not act, but leaves it to the rules of law. But it must be understood always with this restriction; that it holds only, where the legal and equitable estates are co-extensive and commensurate; but I do not by any means admit, that where he has the whole legal estate and a partial equitable estate, the latter sinks into the former; for it would be a disadvantage to him. All this depends upon the misuse of words." And it is stated by Mr. Preston in his work on Merger, *p. 88: "For the purpose of merger, each person who is tenant by entireties has the entirety of the lands as one individual. Therefore, merger may be in the same manner, and to the same extent, as if there were a *sole* seisin;

but joint tenants have, for the purposes of merger, only aliquot parts; although for the purposes of surrender or release to one of them, and for many other purposes of tenure, they are seised *per my et per tout:* and tenants in common have only *particular undivided shares,* which as between themselves may be equal or unequal in their extent, and each share is considered as a distinct tenement, and gives a separate and distinct freehold. Therefore, as to joint tenants, and tenants in common, the merger will not operate beyond the extent of the part in which the owner has two several estates." And in *Donalds* v. *Plumb,* 8 Conn. 447, 453, it is said that in order to create a merger "the legal and equitable estates must be co-extensive and commensurate, or there must be the same estate in law as in equity." And to the same effect is the observation of Shaw, C. J., in *Hunt* v. *Hunt,* 14 Pick, 374, 384: "In order to effect a merger at law, the right previously existing in an individual, and the right subsequently acquired, in order to coalesce and merge, must be precisely co-extensive, must be acquired and held in the same right, and there must be no right outstanding in a third person, to intervene between the right held and the right acquired. If any of these requisites are wanting, the two rights do not merge, but both may well stand together." And see *Merest* v. *James,* 6 Madd. 118; *Hildreth* v. *Eliot,* 8 Pick. 293, 298. Again, it appears by the bill that the two daughters complainants are now fifty-six and sixty-three years of age, respectively, are both married and have had no children, and it is urged, as a ground for the termination of the trust, that there is no longer a possibility of issue, and that the complainants are accordingly the only persons who are entitled to the residue aforesaid. But the rule is otherwise in this respect. In *List* v. *Rodney,* 83 Pa. St. 483, 492, it was said as follows by Mercur, J., of a woman then more than seventy-five years old: "If other children should be born and survive their mother, they will be entitled to share in the estate. This cannot be denied. It is contended, however, that the advanced age of Mrs. Sarah Rodney precludes such an event. We may concede that she has passed the age to which the ability to bear children usually

continues; yet the law appears to have settled that there is no age beyond which it is impossible. 'A possibility of issue is always supposed to exist in law . . . even though the donees be each of them an hundred years old;' 2 Blackstone's Com. *125. 'For that the law seeth no impossibility of having children;' Coke on Littleton, 28 a. Whether the rule rests upon the indelicacy of the acts to which such an inquiry might lead, or to the great uncertainty of arriving at an accurate conclusion, we know not; but certain it is, the rule has stood the test of time, and received the sanction of ages. No case has been cited showing that it has ever before been questioned in Pennsylvania. Nature has fixed no certain age, by years, at which a child-bearing capacity shall begin or end. Any conjecture based on age is too doubtful and uncertain to result in any reliable conclusion. It was well said in *Jee* v. *Audley*, 1 Cox. 324, 'if this can be done in one case it may in another, and it is a very dangerous experiment, and introductive of the greatest inconvenience to give a latitude to such sort of conjecture.'

"It is contended that this doctrine of possibility of issue is only applicable to cases of estate tail after possibility of issue extinct: that it is simply a presumption governing the devolution and quality of estates, and that it should not be presumed when the facts show it to be impossible. This argument is fallacious. The very question before us is whether the possibility of issue is extinct. It affects the transmission of the estate. It diminishes the interests which the children now living may take. The presumption of law is in favor of issue, notwithstanding advanced age. It is a presumption of law on the very fact, which we are requested to say destroys the presumption. The argument makes a conjectural conclusion rest on a fact, when the law declares no such conclusion shall be deduced from that fact." And see I Greenleaf's Cruise on Real Property, *p. 135; Williams on Real Property, *p. 55; 2 Witthaus & Becker, Medical Jurisprudence p. 405; Draper Legal Medicine, p. 112.

Moreover, the dominant purpose apparent in the third clause of the will is "that the shares of my said daughters shall not absolutely vest in said daughters," and is to create an equitable joint tenancy, and that his daughters, should enjoy and control only the income of the trust property, the corpus of which should be free from the control of "any husband of either of my said daughters," both of whom are now married.    This is a positive prohibition of the vesting of the estates in the daughters and is not to be disregarded, so that the trust is as valid to-day as on the day of the death of the testator, and must remain in force until the death of the survivor of his two daughters.    We see no reason for thus defeating the will and his purpose.    Whatever may have been his motive for doing so, the testator had a right to engraft this purpose in his will, and he has thereby created a trust which is still an active trust for such purpose, and is sufficient, without more, to prevent its termination.    In 4 Kent Com. *p. 102, the general rule is thus stated by Chancellor Kent, "Merger is not favored in equity, and is never allowed unless for special reasons and to promote the intention of the party."

In *Whittle* v. *Henning*, 2 Philip, 731, Lord Chancellor Cottenham refused to decree a merger upon a case which is thus stated in the syllabus:    "A fund in court was subject to a trust for a husband for life, remainder to his wife for life, remainder to their son absolutely.    The husband and son, by deed, surrendered and released their respective interests to the wife for the express purpose of giving her a present absolute interest in the fund, and thereby enabling her to assign it at once to the son.    But a petition by the three for payment of the fund to the son was refused, on the ground that this court will not establish an equitable merger by analogy to law, where the effect would be to defeat its own rules and practice in the protection of married women from the marital control."    And see *Bomar* v. *Mullins*, 4 Rich. Eq. 80; *Wehrhane* v. *Safe Deposit Co.*, 89 Md. 179.

(2)    The trustee respondent has never been appointed trustee of the real estate, and as to the personalty, it is sufficient to say, in the language of Mr. Justice Peckham, in the recent case

of *Fitchie* v. *Brown*, 211 U. S. 321, 335.: "Holding the trust to be valid, it is not now necessary to determine to whom the distribution is to be made when the time for distribution shall arrive." And see *Searls* v. *Charitable Baptist Society*, 30 R. I. 478.

The cause will be remanded to the Superior Court, with direction to enter a decree dismissing the bill without prejudice.

*James Harris, Irving Champlin, and Washington R. Prescott,* for complainants.

*James Tillinghast,* for respondent.