M. W. HINES ET AL. v. MRS. S. J. REYNOLDS ET AL.

(Filed 4 May, 1921.)

**1. Wills—Devise—Heirs—Fee Simple.**

While a devise is to the testator's son, "to him and his heirs forever," passes a fee-simple title to him without the use of restrictive expression, it will not be so construed when it appears from the interpretation of other language used in the will that he was only to take a defeasible fee.

**2. Same—Defeasance—Issue—Children—Estates—Remainders.**

Where a devise is to the testator's son "and his heirs:" followed by the words that in the event he should die "without heirs," then to the testator's daughter "and the heirs of her body," the word "heirs," used in connection with the son, evidences the testator's intent, from the relationship of the devisees, that it should mean issue or children of the son, and the words "bodily heirs," used in connection with the daugh-

ter, as issue or children of the daughter, and upon the happening of the contingency after the death of the daughter, her issue or children will take the fee-simple title, to the exclusion of the heirs general of the son dying without issue.

**3. Same—Statutes—Descendible Interests.**

Under the provisions of Rules 1 and 10, C. S., 1654, a devise to the daughter of the testator and her issue, upon the death of the testator's son without issue, is such an interest as is descendible to the issue of the daughter when she has died before the happening of the contingency.

**4. Wills—Devise—Estates—Remainders.**

Where the testator directs that two of his children, beneficiaries under his will, pay a certain sum of money to another of his children, and "no more," the intent of the testator is manifest that the other two children shall enjoy the remainder of the gifts to them.

APPEAL by petitioners in partition proceedings from *Finley, J.,* at June Term, 1920, of RICHMOND.

This is a proceeding for partition of land.

Both parties claim under Joseph Hines, who died in 1865, leaving a will.

In the first item of the will the testator devised all his property to his wife for life.

In the second item he devised all his land, after the death of his wife, to his son, John M. Hines, "to have and to hold to him and his heirs forever." He also gives in the same item all his negroes, to be equally divided between his son, John M. Hines, and his daughter, Elizabeth, stating that he had already advanced his daughter seven negroes, and said item closes with the following provisions: "In case of the death of my said daughter, S. Elizabeth, without heirs her surviving, all the negroes to her bequeathed shall vest in and become the property of my said son, John M. Hines, and his heirs; and in case of the death of my son, John M. Hines, without heirs him surviving, then all the property to him bequeathed, both real and personal, shall vest in and become the property of my said daughter, S. Elizabeth, and the heirs of her body, to her and their sole and separate use as aforesaid. I further bequeath to my said daughter, S. Elizabeth, upon the death of my wife, Sarah, two good beds and furniture and one common farm horse."

In the third item he gives his son, M. W. Hines, $400, to be paid equally by John M. Hines and his daughter Elizabeth in ten annual installments, and concludes this item as follows: "I make the above bequeath to my son, M. W. Hines, and no more."

The following facts were admitted:

"1. That said will was executed on or about 1861, and that testator died on or about 1865, and the will was admitted to probate soon thereafter.

"2. That testator left surviving him his widow, Sarah C. Hines, and three children, to wit: M. W. Hines, S. Elizabeth (Baldwin) (Robinson), and John M. Hines, and none others.

"3. That the widow died intestate about 1870.

"4. That M. W. Hines died intestate about 1877, and that plaintiffs are his lineal descendants.

"5. That S. Elizabeth died intestate in the year 1915, and that the defendants are her lineal descendants.

"6. That John M. Hines died in the year 1917 intestate and without ever having had issue.

"7. That John M. Hines, deceased, held the land described in the petition under the will of Joseph Hines, deceased.

"8. That the relationship as set out in the pleadings is admitted to be correct and that all parties in interest are before the court."

His Honor held that the defendants, who are the children and heirs of the daughter, Elizabeth, were the owners of the land, and entered judgment accordingly, from which the petitioners appealed.

*A. R. McPhail and McIntyre, Lawrence & Proctor for plaintiff.*
*W. L. Spence, O. L. Henry and W. R. Jones for defendants.*

ALLEN, J. It is manifest from an inspection of the whole will that it was the purpose of the testator to give to his son, M. W. Hines, out of his estate $400 and "no more," and that his son John and daughter, Elizabeth, should have and enjoy the remainder.

It is also clear that in the first part of item 2 the land in controversy is devised to John in fee simple absolute, and if there is nothing in the subsequent parts of the will changing this to a defeasible estate, the petitioners are the owners of one-half of the land as the heirs of John, since he left no lineal descendants.

The testator, however, imposed the limitation upon the devise to John that the land should become the property of Elizabeth and the heirs of her body "in case of the death of my son John M. Hines without heirs him surviving," and the present controversy depends on the proper construction of this clause.

The petitioners contend (1) that the words "heirs him surviving" mean "heirs" and not "children" or "issue," and that as John left heirs—the present petitioners and the defendants—the contingency upon which Elizabeth was to take has never happened, and that the estate of John was absolute and passed by descent to his heirs; (2) that if

the word "heirs" means children or issue, the interest of Elizabeth until the death of John was contingent, and would not pass to the defendants by descent, and as Elizabeth died before John, this interest of Elizabeth lapsed.

Both positions are, in our opinion, settled against the petitioners.

On the first question the Court says, in *Pugh v. Allen,* 179 N. C., 309: "It has been held in several of our decisions construing deeds of similar import that, in case of a limitation over on the death of a grantee or first taker without heir or heirs, and the second or ultimate taker is presumptively or potentially one of the heirs general of the first, the term 'dying without heir or heirs' on the part of the grantee will be construed to mean not his heirs general, but his issue in the sense of children and grandchildren, etc., living at his death. *Sain v. Baker,* 128 N. C., 256; *Francks v. Whitaker,* 116 N. C., 518; *Rollins v. Keel,* 115 N. C., 68. In *Sain v. Baker, supra,* the testator devised the property to his son, and on the son's death, without heirs, to his daughters, the word heirs in this limitation was held to mean children, and the present Chief Justice, delivering the opinion, said: 'From the context it is clear that the words without lawful heir or heirs are used in the sense of dying without issue or children, otherwise the limitation over to the daughters would have been in vain.' And in *Francks v. Whitaker* a similar ruling was made, as follows: 'Where a testatrix devised land to her son for life, and after his death to his lawful heir or heirs, if any, and if none, to the children of another son, the words "heir or heirs" will be construed to mean his issue and not his heirs generally, and upon his death without issue the land goes to the children of the other son, all of whom were living at the date of the will.'"

The principle is applied to deeds and wills alike, and all of the conditions are present for its application in the will before us, as Elizabeth, the ultimate taker, was the presumptive heir of John, the first taker, and the word "heirs" must therefore be held to mean children or issue.

If so, did the interest of Elizabeth lapse because of her death before John, or did it pass by inheritance to her children, the defendants?

The same question was raised in *Lewis v. Smith,* 23 N. C., 146, in which, *Gaston, Justice,* says: "The second question raised is free from doubt. The interest in an executory devise or bequest is transmissible to the heir or executor of one dying before the happening of the contingency upon which it depends," and this principle has been affirmed.

See *Moore v. Barrow,* 24 N. C., 437; *Weeks v. Weeks,* 40 N. C., 117, and *Kornegay v. Morris,* 122 N. C., 199.

In *Kornegay v. Morris, supra,* a contingent executory devise was made to W. F. Kornegay, contingent upon the death of John J. Kornegay and Albert U. Kornegay, the first takers, without children. John J.

Kornegay had died without issue and W. F. Kornegay also died without children, leaving Albert U. Kornegay his sole heir at law. Albert U. Kornegay contracted to sell the lands devised under the will, and the Court held that the contingent interest of W. F. Kornegay vested in Albert U. Kornegay by descent.

*Furches, Justice,* delivering the opinion of the Court in the case, says: "The person (W. F.) being certain, but the event upon which his estate depends being uncertain, it was such a contingent estate as might be transmitted by descent. 2 Fearne Remainders, pp. 28, 30 and 433; *Fortescue v. Satterthwaite,* 23 N. C., 566. And W. F. being dead without issue, and leaving Albert U. his only heir at law, this contingent estate descended and vested in Albert U."

Rule 1, C. S., 1654, provides: "Every inheritance shall lineally descend forever to the issue of the person who died last seized, entitled or having any interest therein, but shall not lineally ascend, except as hereinafter provided." And Rule 12: "Every person, in whom a *seizin* is required by any of the provisions of this chapter, shall be deemed to have been seized, if he may have had any right, title or interest in the inheritance," thus recognizing that any interest in land belonging to a certain person may be transmitted by inheritance.

We are therefore of opinion the defendants are the owners of the land and that the petitioners are not entitled to partition thereof.

Affirmed.