WILLIAMS ET ALS. v. SASSER ET ALS.

(Filed 24 March, 1926.)

1. **Estates—Remaindermen—Vested Interest—Heirs of the Body—Children—Rule in Shelley's Case.**

   A conveyance of land to the grantor's daughter for life, with remainder over to "the lawful begotten heirs of her body," to be held in trust free from the debts of her husband and "for the special benefit of herself and children": *Held,* the rule in *Shelley's case* does not apply, and the limitation over is to her children, who take at once a vested interest not determinable upon the contingency of their surviving their mother.

2. **Estates—Deeds and Conveyances — Remainders—Vested Interests—Wills—Devises.**

   One who takes a vested remainder may dispose of the lands by will that takes effect during the continuance of the preceding life estate, but its enjoyment will be postponed.

**3. Estates—Contingent Remainders—Vested Interest—Words of Survivorship..**

Ordinarily where the vesting of an interest in the remainderman is postponed to the death of the first taker, some expression indicating it, or importing survivorship, are used in the creation of the estate.

**4. Same—Trusts—Postponement of the Possession.**

Where from a proper interpretation of the instrument creating it a remainder in lands is vested, a trust imposed that the estate is to be held for determinative periods, for the benefit of those taking after the falling in of the precedent estate only postpones the absolute ownership of the remaindermen accordingly.

CIVIL ACTION before *Barnhill, J.,* at December Term, 1925, of DUPLIN.

This was a civil action for partition instituted before the clerk of the Superior Court. One of the plaintiffs, Bessie L. Sasser, claimed a one-eighth undivided interest in the land as devisee of Mollie L. Williams, and also an interest in said land as heir at law of Indiana S. Sasser. The defendants admitted that Bessie L. Sasser was entitled to an interest in the property as heir at law of Indiana S. Sasser, but denied that she was entitled to any interest in said land under the will of Mollie L. Williams.

In March, 1858, Daniel Harper executed and delivered to Martha L. Williams a deed for the land in controversy, as follows, to-wit: "North Carolina, Duplin County. Know all men by these presents, that I, Daniel Harper, of the State of North Carolina, and county of Duplin, do for the natural love and affection that I have for my daughter, Martha L. Williams, wife of Barachas W. Williams, do give unto her my plantation that I now live on, lying on the east side of the Wilmington and Weldon Railroad, and on the north side of Bear Swamp, adjoining the lands of D. B. Newton, David Wright and others, supposed to be 160 acres, which by reference to. deed will more fully show together with my dwelling-house and out-houses on the premises during her natural life and at her death to be equally divided between the lawful begotten heirs of her body.

I further give unto my beloved daughter the following negroes, Old Oty, aged about thirty-eight years, Jackson, aged about 16 years, Squire John about 13 years, Cassey about 9, Winnie about 7, Sally about 4, and young Oty about 9 months old and their increase during her natural life but I reserve my lifetime in the land and negroes and after her death to be divided and disposed of as the above land and not to be liable nor subject to any debts heretofore made by her husband nor any that he may contract hereafter nor any future husband not to be disposed of by him in any way whatever, only to be used by her husband for the

special benefit of herself, and children during her natural life and at her death to go in the hands of Daniel B. Newton as special trustee for the lawful begotten heirs of her body and for him as they become 21 years old to divide and hand over to them as the law directs in all such cases all the above named property I do warrant and defend the title to my daughter against the lawful claims of any and all persons whatsoever. But by the mutual consent of my daughter I have the use of the above property or any portion of it that I may want during my life.

In testimony whereof, I hereunto set my hand and seal this the 11th day of March, 1858.　　　　DANIEL (his X mark) HARPER, (Seal).

Signed, sealed and delivered in the presence of
　　　　　　　　　　　　　　DAVID WRIGHT, D. BOWDEN.

Before signed, I do reserve one quarter of an acre including my graveyard where my wife Alisa Harper and my grandchild is buried free from all encumbrances forever.
　　　　　　　　　　　　DANIEL (his X mark) HARPER, (Seal).

Signed, sealed and delivered in the presence of
　　　　　　　　　　　　　　DAVID WRIGHT, D. BOWDEN.

The due execution of the foregoing deed is proved in open court by the oath of D. Bowden, subscribing witness and ordered to be registered.
　　　　　　　　Test: JOHN J. WHITEHEAD, *Clerk.*

Witnessed and ordered to be registered.　THOS. I. KOONCE, *Register.*
Registered Book 22, page 368."

After the pleadings were filed the question came before Judge Barnhill for determination, and he rendered judgment, the pertinent portion of which is as follows: "It is adjudged that said will of Mollie L. Williams was ineffectual to convey any interest in said land and that the petitioner, Bessie L. Sasser, together with the other heirs at law of Indiana S. Sasser are seized of a 1-7 undivided interest in said land, *i. e.,* Bessie L. Sasser is seized of a 1-21 interest. This cause is remanded to the clerk to the end that he may proceed herein in accordance with this judgment."

The defendants contend that the judgment as rendered is correct for the reason that Mollie Williams predeceased her mother, Martha L. Williams, and hence had no interest in said land to devise to her

niece. The plaintiff, Bessie L. Sasser, contends that the judgment should be reversed for the reason that the said will of Mollie L. Williams conveyed to her a one-eighth undivided interest.

*R. D. Johnson for plaintiff.*
*Gavin & Boney for defendants.*
*Downing & Downing for defendant, Rosa A. Sasser.*

BROGDEN, J. It is conceded in the briefs of the parties that the rule in· *Shelley's case* is not involved for the reason that the superadded words "equally divided between the lawful begotten heirs of her body" bar its application. *Ward v. Jones,* 40 N. C., 400; *Mills v. Thorne,* 95 N. C., 362; *Jones v. Whichard,* 163 N. C., 244; *Haar v. Schloss,* 169 N. C., 228; *Blackledge v. Simmons,* 180 N. C., 535.

Therefore, Martha L. Williams, the grantee in the deed, took thereunder a life estate only with remainder ·to be "equally divided between the lawful begotten heirs of her body," it being further provided that "at her death to go into the hands of Daniel B. Newton as special trustee for the lawful begotten heirs of her body, and· for him, as they become 21 years old, to divide and hand over to them as the law directs in all such cases, all the above named property." It is manifest that the words "lawful begotten heirs of her body" are not employed to designate an entire class to take in succession from generation to generation or used in a technical sense, but rather as a mere *descriptio personarum.* Hence, the words "lawful begotten heirs of her body" should be construed as children. This interpretation is further reinforced and established by the language of the deed itself, and particularly the following clause thereof, "only to be used by her husband for the special benefit of herself and *children* during her natural life, etc." *Puckett v. Morgan,* 158 N. C., 344; *Bizzell v. Loan Association,* 172 N. C., 159; *Albright v. Albright,* 172 N. C., 351; *Kornegay v. Cunningham,* 174 N. C., 209; *Pugh v. Allen,* 179 N. C., 307; *Blackledge v. Simmons,* 180 N. C., 535.

Under this construction Martha L. Williams, the grantee in the deed, would take a life estate with remainder to her children to be equally divided as they become 21 years old.

The vital question immediately arises: "Is the remainder vested or contingent?" If contingent, the will of Mollie Williams who predeceased the life tenant, Martha L. Williams, is ineffectual, and the plaintiff, Bessie L. Sasser, takes nothing thereunder. If the remainder is vested, Bessie L. Sasser took under said will the one-eighth interest of Mollie L. Williams in said land.

The contention of the defendants that the remainder is contingent rests upon the theory that only the children of the life tenant who

survive her will take an interest in the property. They rely upon the decisions of *Richardson v. Richardson,* 152 N. C., 705; *Bowen v. Hackney,* 136 N. C., 187; *Starnes v. Hill,* 112 N. C., 1; *James v. Hooker,* 172 N. C., 780; *Mercer v. Downs, ante,* 203. In all of these cases there were words of survivorship or words importing survivorship in the instrument creating the estate, and these words of survivorship were construed as referring to the death of the life tenant as the time for ascertaining or designating the parties entitled to the property. There is no such language in the deed of Daniel L. Harper.

In *Power Co. v. Haywood,* 186 N. C., 313, the question as to whether the remainder was vested or contingent was fully discussed by *Adams, J.* It was the sole question for decision. The distinction between vested and contingent remainders was thus expressed: "The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent." In that case the devise was "to William, during his natural life, and at his death to his eldest son; but if he should die leaving no son surviving him, then I give said plantation to my children, to be equally divided between them." Thereafter William James Boylan was born to the life tenant, William Boylan, and died during his father's lifetime, and therefore before the life estate terminated. Continuing the discussion, *Justice Adams* says further: "Guided by the foregoing authorities and others which are not cited, we are unable to concur in the argument that the vesting of the remainder was dependent on the decease of the life tenant during the life of the remainderman."

In *Witty v. Witty,* 184 N. C., 375, it appeared that Levi Witty died in January, 1872, devising his land to his wife, Louisa Witty, for life, and at her death, or if she married again, the land was to be sold at public auction and the proceeds to be divided equally among "my lawful heirs." At the time of his death the testator was survived by five children, all of whom died before the death of the life tenant. E. M. Witty, one of the children of the testator, died before his mother, the life tenant, devising his interest in the land to his wife, Mrs. E. M. Witty, for life, with remainder to his adopted son, Mark Witty, Jr. *Stacy, J.,* says: "It is provided that the remainder after the life estate is to be divided equally among 'my lawful heirs,' *simpliciter,* and this imports a division among those who were the heirs of the testator at the time of his death, and who took in right at that time, though they were not to come into actual possession and enjoyment until the previous benefit, intended for their mother, should terminate by her death."

And further, "the fact that the direction is to sell the realty at the expiration of the preceding particular estate and to divide the proceeds derived therefrom ordinarily would not affect the general rule as to when the remainder is to vest."

The various shades of definition and distinguishing marks of vested and contingent remainders are fully discussed and classified in the *Haywood case* and the *Witty case.* These cases summarize and gather up in clear expression the principles reaffirmed in a long line of decisions from *Brinson v. Wharton,* 43 N. C., p. 80, to the present time. Under the authority of the reasoning in these cases we hold that Mollie L. Williams took a vested remainder in the land, and that therefore her will conveying her interest to Bessie L. Sasser was effectual to transfer her interest to the said Bessie L. Sasser.

While it is true that the deed provided that at the death of the life tenant the land was to be held by a trustee until the remainderman should arrive at 21 years of age, this fact does not affect the principle regulating the time of vesting of the estate in the remainderman. It simply postponed the time of enjoyment. 23 R. C. L., 529; *Starnes v. Hill,* 112 N. C., 1; *Bank v. Ballard,* 83 Ky., 481; *Tayloe v. Mosher,* 29 Md., 443; *Schofield v. Alcott,* 11 N. E., 357; L. R. A., 1918-E., 1127.

Holding, therefore, as we do, that Mollie L. Williams took a vested remainder, the judgment must be

Reversed.