A. G. BLANCHARD AND WIFE, REBECCA W. BLANCHARD, v. R. E. WARD, SR.

(Filed 23 May, 1956.)

**1. Deeds § 13a—**

Where there is a conveyance to A for life and then to his children, with limitation over in the event A has no children, *held* the remainder to A's children is contingent until they are *in esse*, but upon the birth of a child the remainder vests in such child subject to be opened up for any child or children of A who may thereafter be born. The distinction is noted where the conveyance is to the surviving children of the life tenant.

**2. Same: Estates § 9a—**

The deed conveyed to A a life estate, with remainder to his children, with limitation over in the event A had no children. A's only son died during childhood. *Held:* Upon the birth of the son, the remainder vested in him and the limitation over was defeated, and ·upon the death of the son, A and his wife took the vested remainder under G.S. 29-1, Rule 6, as tenants in common.

**3. Estates § 4—**

In order for a lesser estate to be merged in a greater estate, both estates must be held by the same person in the same right without an intermediate estate.

**4. Same—**

Where the owner of a life estate acquires a one-half interest in the remainder as tenant in common, his life estate merges with the remainder *pro tanto*, but the other tenant in common holds his interest in the remainder subject to the first tenant's life estate.

**5. Same: Estates § 9a—**

Land was conveyed to A for life, remainder to his children. A's only child died during childhood, and A and his wife inherited the vested remainder as tenants in common. *Held:* The wife's interest in remainder

was subject to the husband's life estate, which life estate is sufficient to support the contingent remainder to any child or children of A who may thereafter be born, and A and wife cannot convey the indefeasible fee.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Hobgood, J.,* December Term, 1955, of WAKE.

This is a civil action for specific performance.

It was agreed by all parties hereto and their counsel that the trial judge might hear this matter on an agreed statement of facts and the written instruments attached thereto; that he should make his findings of fact therefrom and draw his conclusions of law and enter a judgment consistent therewith, pursuant to the provisions of our Declaratory Judgment Act, G.S. 1-253, *et seq.*

The court found the following pertinent facts:

1. That on 15th September, 1931, A. G. Blanchard and his wife, Maggie E. Blanchard, executed a deed to A. G. Blanchard, a plaintiff herein, and A. J. Blanchard, nephews of the said grantors. The grantees are brothers. The deed is recorded in Book 621, page 532, Wake County Registry. The said deed, embracing about 309 acres of Wake County farm land, including the one-acre tract at issue in this action, reserved unto the grantors each a life estate in the entire *locus.* That at the time of the execution of said conveyance in 1931 each of the grantees was a minor and unmarried.

2. That on 20th June, 1932, A. G. Blanchard, grantor in the aforesaid deed, died, and on 10th September, 1946, Maggie E. Blanchard, the other grantor, died.

3. That on 17th September, 1946, the said A. J. Blanchard and his wife, Marie Murphrey Blanchard, filed a petition for partition of the farm conveyed by the said deed. A. G. Blanchard and his wife, Rebecca Wheeler Blanchard, their son, Robert Gibson Blanchard, and petitioners' two minor children, Jacquelyn Marie and Jennifer Lee Blanchard, were named defendants in the petition. The Wake County Superior Court appointed guardians for the three minor defendants to the action and for the unborn children of A. G. and A. J. Blanchard. The farm involved was partitioned in severalty, one-half to A. G. Blanchard and his children, one-half to A. J. Blanchard and his children.

4. That the said Robert Gibson Blanchard died intestate in 1952 at the age of 13. His mother and father, plaintiffs herein, survived. He left no brothers or sisters or issue of such and his parents have had no other child.

5. That on 20th October, 1955, plaintiffs contracted in writing with the defendant herein, the plaintiffs to sell and the defendant to buy a

one-acre tract of land cut from the share of the farm allotted to A. G. Blanchard and his children. The stipulated price was $1,500.00.

6. That plaintiffs prepared and executed a deed, embracing the tract described in the contract of sale, and tendered same to the defendant as provided in the contract. The defendant refused to accept the deed, contending that plaintiffs do not own an indefeasible fee in the premises and, therefore, could not deliver a marketable title thereto.

The granting clause in the deed under consideration is as follows: ". . . do grant, bargain, sell and convey to the said A. J. Blanchard and A. G. Blanchard for their natural lifetime and then to their children, if any, a certain tract or parcel of land in Middle Creek Township." The *habendum* in the deed is as follows: "The above described lands are hereby conveyed to the said A. J. Blanchard and A. G. Blanchard to be held by them during their natural lifetime and then to go to their children, if they shall have any, but if there is no issue, then this land shall go to the father of said A. J. Blanchard and A. G. Blanchard, and to the heirs of their father, Dexter Blanchard."

The remaining findings of fact are not essential to a decision herein.

Upon the foregoing findings of fact, the court concluded as a matter of law: (1) That it was the intention of the grantors in the deed to A. G. and A. J. Blanchard that the interests of the children born to them or either of them should become vested in such children upon their birth; that the grantors further intended that the remainders, after the life estates of A. G. and A. J. Blanchard, should pass to their children as a class and as tenants in common. (2) That since there had been a partition proceedings between the life tenants and their children, as vested remaindermen, that at the time of his death in 1952, Robert Gibson Blanchard, held a vested remainder in the entire share allotted to A. G. Blanchard and children. (3) That "the deed under which the property involved was conveyed did not anticipate or provide for the succession of vested interests to meet the situation which actually developed. . . . The instrument specifically set up a limitation over to Dexter Blanchard and his heirs upon the failure of 'issue' by the life tenants. Both tenants had issue and remainders vested in the same upon their birth. The limitation over to Dexter Blanchard and his heirs upon the failure of issue was thus rendered void for the reason that the contingency upon which it depended had happened." (4) "Plaintiffs have done nothing to defeat the contingent interest of unborn children of A. G. Blanchard in the property. Yet they have become seized of the vested remainder of their son, Robert Gibson Blanchard, by the law of intestate descent prevailing at the time of the latter's death in 1952. The life estate of A. G. Blanchard was thus terminated by its merger into a vested remainder. The contingent re-

mainders of A. G. Blanchard's unborn children were thus defeated by the elimination of the prior estate upon which such remainders depended."

Judgment was accordingly entered to the effect that the petitioners do have a good and indefeasible fee simple title to the property and that the contract between the plaintiffs and the defendant is valid and enforceable. Defendant appeals, assigning error.

*Charles W. Daniel for plaintiffs, appellees.*
*Robert A. Cotten for defendant, appellant.*

DENNY, J. The defendant takes the position that the remainder interest of the child, Robert Gibson Blanchard, at the time of his death was contingent. Therefore, he contends that the provisions of G.S. 41-4 are controlling and the roll call may not be had until the death of A. G. Blanchard, the first taker, who is one of the plaintiffs herein. *House v. House,* 231 N.C. 218, 56 S.E. 2d 695; *Patterson v. McCormick,* 177 N.C. 448, 99 S.E. 401; *Rees v. Williams,* 165 N.C. 201, 81 S.E. 286; *Perrett v. Bird,* 152 N.C. 220, 67 S.E. 507; *Dawson v. Ennett,* 151 N.C. 543, 66 S.E. 566; *Williams v. Lewis,* 100 N.C. 142, 5 S.E. 435; *Galloway v. Carter,* 100 N.C. 111, 5 S.E. 4; *Buchanan v. Buchanan,* 99 N.C. 308, 5 S.E. 430.

An examination of the *habendum* in the deed under consideration is to the effect that the land conveyed to A. J. and A. G. Blanchard is to be held by them during their lives and "then to go to their children, if they have any, but if there is no issue, then this land shall go to the father" of the grantees and to his heirs.

The land conveyed by the above deed, having been duly partitioned as set forth hereinabove, we are concerned only with the title to that portion allotted to A. G. Blanchard and his children. *Lumber Co. v. Herrington,* 183 N.C. 85, 110 S.E. 656.

It is settled law in this jurisdiction that when a deed is made to A for life, and at his death to his children, if any, and if there is no issue, then to B and his heirs, if the life tenant has no child or children when it is executed, the remainder is contingent as to such child or children until they are *in esse,* but the moment a child is born to such life tenant, the remainder vests in such child, subject to open and make room for any child or children who might thereafter be born within the class before the falling in of the life estate. *Mason v. White,* 53 N.C. 421; *Lumber Co. v. Herrington, supra; Power Co. v. Haywood,* 186 N.C. 313, 119 S.E. 500; *Williams v. Sasser,* 191 N.C. 453, 132 S.E. 278; *Waller v. Brown,* 197 N.C. 508, 149 S.E. 687; *Beam v. Gilkey,* 225 N.C. 520, 35 S.E. 2d 641; *Neill v. Bach,* 231 N.C. 391, 57 S.E. 2d 385; *Doe v.*

*Considine,* 73 U.S. 458, 18 L. ed. 869; 33 Am. Jur., Life Estates, Remainders, etc., section 134, page 595, *et seq.;* 31 C.J.S., Estates, section 73, page 92; 24 A. & E. Enc. of Law (2nd Ed.), page 382, *et seq.*

It will be noted that the deed to A. J. and A. G. Blanchard gave to them a life estate and the same instrument gave to their children, if any, the remainder. This deed was not made to these grantors and to such of their children as might survive them. The moment Robert Gibson Blanchard came into being he took a vested interest in common with the children of A. J. Blanchard prior to the partition proceeding. Consequently, when he died, where did his vested remainder in the lands allotted to A. G. Blanchard and his children, as a class, go?

The Supreme Court of the United States, in *Doe v. Considine, supra,* in considering this identical question, quoted with approval from 4 Kent's Commentaries, page 284, the following: "A devises to B for life, remainder to his children but if he dies without leaving children remainder over, both the remainders are contingent; but if B afterwards marries and has a child, the remainder becomes vested in that child, subject to open and let in unborn children, and the remainders over are gone forever. The remainder becomes a vested remainder in fee in the child as soon as the child is born, and does not wait for the parent's death, and if the child dies in the lifetime of the parent, the vested estate in remainder descends to his heirs."

Therefore, when Robert Gibson Blanchard died, before the life estate fell in, leaving no brother or sister and no issue capable of inheriting, he being the sole representative of the class, his interest vested in his father and mother as tenants in common. G.S. 29-1, Rule 6.

In the case of *Severt v. Lyall,* 222 N.C. 533, 23 S.E. 2d 829, the testator devised certain lands "to my beloved wife, Letha Severt, during her natural life, and at her death to go in fee simple to Clarence Odell Severt, son of W. A. Severt." Clarence Odell Severt, the remainderman, survived the testator but died 23rd August, 1914, intestate and without issue. He predeceased the life tenant. At the time of his death he left surviving as his heirs at law two sisters of the whole blood, the defendants Nellie Severt Lyall and Nelia Severt Church. After his death, there were born to his father and second wife four children, the plaintiffs in the action. The eldest was born in December, 1919, over four years after the death of the remainderman, but all were born prior to the death of the life tenant. *Barnhill, J.,* now *Chief Justice,* said: "Clarence Odell Severt, upon the death of the testator and by virtue of the devise to him, became seized of a vested remainder. *Priddy & Co. v. Sanderford,* 221 N.C. 422, 20 S.E. 2d 341. This seems to be conceded. Being a vested remainder it was a fixed interest in land to take effect in possession after the particular estate is spent. *Priddy &*

*Co. v. Sanderford, supra.* As the owner of the remainder he had a vested interest in the land and was 'seized' of an interest in the inheritance and the remainder owned by him became a new estate acquired by purchase. It passed by inheritance in the line of the new purchaser, 2 Minor Institutes, 442.

"When the owner of the fee conveys it to one for life with the remainder to another the remainderman takes by purchase and becomes a new *stirpes* of inheritance or new stock of descent. On his death the estate passes directly to his heirs at law. *King v. Scoggin,* 92 N.C. 99; *Early v. Early,* 134 N.C. 258; *Tyndall v. Tyndall,* 186 N.C. 272, 119 S.E. 354; *Allen v. Parker,* 187 N.C. 376, 121 S.E. 665; *Hines v. Reynolds,* 181 N.C. 343, 107 S.E. 144. It follows that the *feme* defendants, the nearest blood kin of Clarence Odell Severt, living at the time he died, acquired title by inheritance at his death. Plaintiffs cannot take as his heirs. They were not 'in life' at the time of the death of the remainderman and were not born within ten lunar months thereafter."

In *Power Co. v. Haywood, supra,* in 1861 William Boylan devised a plantation and negro slaves to his son, John H. Boylan, for life, with this further proviso: "If my son, John, shall marry and shall have any lawfully begotten child or children, or the issue of such, living at his death, then I give, devise and bequeath the said plantation and negroes to such child or children; but if he shall die, leaving no such child or children, nor the issue of such, then living, then I give the said plantation and negroes to my grandson, William (son of William M. Boylan), during his natural life, and at his death to his eldest son."

John H. Boylan never married, and died leaving no issue surviving him. Upon the death of John H. Boylan, William Boylan (son of William M. Boylan and grandson of the testator), entered into possession of the land in controversy. William Boylan married and there were born to the marriage two children: the first was William James Boylan, who was born 30th July, 1886, and who was the oldest and only son of the said William Boylan; the other child was Miss Josephine Boylan. William James Boylan predeceased his father and died unmarried and without issue on 14th July, 1906, leaving surviving him his sister, Josephine Boylan.

The will of William Boylan contained a residuary clause giving and devising to his children all his real and personal property not disposed of in the will. Since William James Boylan, the eldest son of William Boylan, was not living when William Boylan (grandson of the testator) died, and the life estate fell in, the defendants claimed the plantation in controversy under the residuary clause in the will.

The appellants contended, as in the instant case, that C.S. 1737, now G.S. 41-4, controlled and that the only two elements necessary to bring

the statute into operation were a contingent limitation and the death upon which the limitation is made to depend. The Court, however, held that "William Boylan (son of William M. Boylan), by virtue of the devise in the third item of the will, immediately upon the death of John H. Boylan, unmarried and without issue, took an estate in the land for his natural life, and that the remainder which was contingent theretofore (the remainderman not being *in esse*) became vested in William James Boylan at the moment of his birth. For this reason, section 1737 of the Consolidated Statutes, which pertains to contingent limitations, is not applicable to the facts. . . . We must, therefore, hold in the instant case that William James Boylan acquired a heritable interest in the land in suit, which, upon his death, descended to Josephine, his sister and only heir at law." *Early v. Early*, 134 N.C. 258, 46 S.E. 503; *Allen v. Parker, supra; Bond v. Bond*, 194 N.C. 448, 139 S.E. 840.

The court below held that since A. G. Blanchard and his wife took the vested remainder of Robert Gibson Blanchard by operation of law, under G.S. 29-1, Rule 6, the life estate of A. G. Blanchard was terminated by this merger into a vested remainder. It should be noted that under the general rule of descent, A. G. Blanchard and his wife, Rebecca W. Blanchard, took the vested remainder of Robert Gibson Blanchard as tenants in common. This being so, it is our opinion that the interest of Rebecca W. Blanchard is still subject to the life estate of A. G. Blanchard.

It is stated in 31 C.J.S., Estates, section 126, page 147, *et seq.*, "If the owner of a life estate acquires the fee to only a portion of the remainder there will be a merger *pro tanto*, but the life estate in the remainder of the property will not be affected." *Larmon v. Larmon*, 173 Ky. 477, 191 S.W. 110; *Clark v. Parsons*, 69 N.H. 147, 39 A. 898, 76 Am. St. Rep. 157.

While in 33 Am. Jur., Life Estates, Remainders, etc., section 175, page 642, we find this statement: "The whole title, legal as well as equitable, must unite in one and the same person in order that there may be a merger which will destroy a contingent remainder." It is further stated in 19 Am. Jur., Estates, section 135, page 588, *et seq.*, "Under the common law definition which is generally accepted under the modern law, merger is the absorption of one estate in another, where a greater estate and a less coincide and meet in one and the same person without any intermediate estate, whereby the less is immediately merged or absorbed in the greater. To constitute a merger, it is necessary that the two estates be in one and the same person at one and the same time and in one and the same right. . . . An estate may merge for one part of land acquired, and continue in another part of it. With respect to joint tenants and tenants in common, a merger will not

operate beyond the extent of the part in which the owner has two several estates." *Larmon v. Larmon, supra; Clark v. Parsons, supra; Bowlin v. Rhode Island Hospital Trust Co.,* 31 R.I. 289, 76 A. 348, 140 Am. St. Rep., 758.

In the case of *Trust Co. v. Watkins,* 215 N.C. 292, 1 S.E. 2d 853, this Court quoted with approval from Blackstone's Commentaries, Vol. 2, page 177, as follows: "Whenever a greater estate and a less coincide and meet in one and the same person, without any intermediate estate, the less is immediately annihilated; or, in the law phrase, is said to be merged, that is, sunk or drowned in the greater. Thus, if there be tenant for years and the reversion in fee simple descends to or is purchased by him, the term of years is merged in the inheritance and shall never exist any more. But they must come to one and the same person in one and the same right."

Therefore, we hold that since the estate or interest of Rebecca W. Blanchard is subject to the life estate of A. G. Blanchard, this life estate is sufficient to support the contingent remainder of any child that might be born to the plaintiffs during the continuance of such estate (*Griffin v. Springer, ante,* 95), and, therefore, the plaintiffs cannot convey a fee simple indefeasible title to the premises they have contracted to convey to the defendant. *Cf. Winslow v. Speight,* 187 N.C. 248, 121 S.E. 529. This being so, we deem it unnecessary to determine whether or not A. G. Blanchard's interest would also open up for contingent remaindermen.

The facts involved herein might raise this question: With the joinder of the plaintiffs in the proposed conveyance, would not all the interests of the plaintiffs merge in the defendant, as grantee, and give him a good title? We know of no decision in this State that has permitted contingent remainders to be destroyed by the tortious conveyance of a life tenant. Hence, the judgment of the court below is reversed.

Reversed.

DEVIN, J., took no part in the consideration or decision of this case.